[S. F. No. 22777. In Bank. May 6, 1971.]

T.N.G., a Minor, et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY
OF SAN FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Kenneth Hecht, Peter Bull, Armando Menocal, Michael Sorgen, Oscar Williams and William Turner for Petitioners.

No appearance for Respondent.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, John T. Murphy, Derald E. Granberg, Edward P. O'Brien and Louise H. Renne, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**TOBRINER, J.**—In this case we hold that a juvenile[1] who has been temporarily detained by juvenile court authorities and subsequently released

---

[1]To prevent the disclosure of the minor's identity in proceedings under the Juvenile Court Law, this court and the Courts of Appeal have generally used the juvenile's first name and the first initial of his last name in opinions and orders. (See, e.g., *Jimmy H.* v. *Superior Court* (1970) 3 Cal.3d 709 [91 Cal.Rptr. 600, 478 P.2d 32]; *In re Ricky H.* (1970) 2 Cal.3d 513 [86 Cal.Rptr. 76, 468 P.2d 204]; *In re Gladys R.* (1970) 1 Cal.3d 855 [83 Cal.Rptr. 671, 464 P.2d 127]; *In re Dennis M.* (1969) 70 Cal.2d 444 [75 Cal.Rptr. 1, 450 P.2d 296].) Attorneys have similarly not mentioned a minor's last name in briefs and petitions. We have largely avoided the word "Anonymous" in the title of opinions because of the confusion that would result from a series of "Anonymous" cases. Similarly, we have avoided the use of a juvenile's initials because of the possible confusion with the large number of agencies identified by their initials, e.g., C.Y.A., F.B.I., C.I.I., H.U.D., H.E.W., and O.P.D. In the present case, however, the peculiarly identifiable nature of the juvenile's first name requires that we depart from our preferred practice and use the juvenile's initials in the title of the opinion.

without further proceedings does not become subject to a record which should be described as an "arrest" or "detention" record. In filling out forms for applications for educational or occupational opportunities such a juvenile need not state that he has been "arrested" or "detained."

Petitioners ask for a more sweeping holding: they ask that the records themselves be immediately sealed and expurgated; they would accomplish this end by holding unconstitutional Welfare and Institutions Code section 781, which establishes a five-year waiting period for such sealing and specifies procedures to obtain it. Petitioners contend that the section denies the equal protection of the law and due process. We believe, however, as we shall explain, that such a charge does not stand and that the retention of the records of even the innocent juvenile serves certain salutary purposes.

To protect the juvenile who has been temporarily held and released we need not hold Welfare and Institutions Code section 781 unconstitutional; we need only invoke the provisions and policy of the existing law. Both the underlying policy of the Juvenile Court Law which enfolds its procedures within the cloak of confidentiality, and the careful exclusion of the language of arrest as to such an innocent juvenile from the sanctions of that law, support the conclusion that he need not state that he has been arrested or detained. Nor does that law permit the authorities to release to third persons any such information as to arrest or detention.

### 1. *The facts.*

At about 9:45 a.m. on April 15, 1970, three youths were distributing anti-war leaflets outside Balboa High School in San Francisco. Two of the youngsters, petitioners in the present proceeding, were then and are now 15 and 16 years old. The third youth was 18 years of age. Two San Francisco police officers in civilian dress, viewing the three engaging in these activities, took them into custody for allegedly loitering near a school in violation of Penal Code section 653g.[2]

The officers transported the three juveniles to the Ingleside police station where they were held for about two and one half hours. At about 11:20 a.m. the police officers completed a standard "Incident Report" describing the conduct of the youths and the circumstances of their detention. The

---

[2]Penal Code section 653g provides, "Every person who loiters about any school or public place at or near which children attend or normally congregate is a vagrant, and is punishable by a fine of not exceeding five hundred dollars ($500) or by imprisonment in the county jail for not exceeding six months, or by both such fine and imprisonment." The Legislature in 1970 added, "As used in this section, 'loiter' means to delay, to linger, or to idle about any such school or public place without a lawful purpose for being present."

18-year-old youth was taken to the local jail facility and later released. The two petitioners were sent to the San Francisco Youth Guidance Center. At about 2 p.m. a juvenile probation officer considered the "Incident Report" and determined to release petitioners from custody. (Welf. & Inst. Code, § 628.) Later that afternoon, the parents came to the center and took the children home.

The juvenile probation department filed no petition for wardship or any other formal charges against the two petitioners. Neither youth was ever taken before the juvenile court or placed on formal or informal probation. (See Welf. & Inst. Code, § 654.) Neither petitioner has ever been detained, arrested, charged with any criminal conduct, or appeared before any court on any charges, but for the incident of April 15th.

On June 26, 1970, the two petitioners sought an order from the San Francisco Juvenile Court sealing their detention records pursuant to Welfare and Institutions Code section 781.[3] On July 1, 1970, Judge Francis

---

[3] Welfare and Institutions Code section 781 provides, "(a) In any case in which a petition has been filed with a juvenile court to commence proceedings to adjudge a person a dependent child or ward of the court, in any case in which a person is cited to appear before a probation officer or is taken before a probation officer pursuant to Section 626, or in any case in which a minor is taken before any officer of a law enforcement agency, the person or the county probation officer may, five years or more after the jurisdiction of the juvenile court has terminated as to the person, or, in a case in which no petition is filed, five years or more after the person was cited to appear before a probation officer or was taken before a probation officer pursuant to Section 626 or was taken before any officer of a law enforcement agency, or, in any case, at any time after the person has reached the age of 21 years, petition the court for sealing of the records, including records of arrest, relating to the person's case, in the custody of the juvenile court and probation officer and any other agencies, including law enforcement agencies and public officials as petitioner alleges, in his petition, to have custody of such records. The court shall notify the district attorney of the county and the county probation officer, if he is not petitioner of the petition, and such district attorney or probation officer or any of their deputies or any other person having relevant evidence may testify at the hearing on the petition. If, after hearing, the court finds that since such termination of jurisdiction or action pursuant to Section 626, as the case may be, he has not been convicted of a felony or of any misdemeanor involving moral turpitude and that rehabilitation has been attained to the satisfaction of the court, it shall order sealed all records, papers, and exhibits in the person's case in the custody of the juvenile court, including the juvenile court records, minute book entries, and entries on dockets, and other records relating to the case in the custody of such other agencies and officials as are named in the order. Thereafter, the proceedings in such case shall be deemed never to have occurred, and the person may properly reply accordingly to any inquiry about the events, records of which are ordered sealed. The court shall send a copy of the order to each agency and official named therein, and each such agency and official shall seal records in its custody as directed by the order, shall advise the court of its compliance, and thereupon shall seal the copy of the court's order for sealing of records that it or he received. The person who is the subject of records sealed pursuant to this section may petition the superior court to permit inspection

W. Mayer held a hearing on the petition for sealing, at which the petitioners, their attorney, one of their parents, and a representative of the Juvenile Probation Department appeared. After hearing testimony of the petitioners and argument of counsel, the trial court denied the petition for sealing.

Although the trial court did not prepare a written memorandum of decision, the transcript of the hearing reveals several reasons for the court's decision. Firstly, the trial court upheld the constitutionality of the five-year waiting period prescribed by section 781 before sealing may occur. The court observed, "Now, I think there is a reason why the Legislature feels these records should not be sealed, and that is because on many occasions young persons come back before this court while they are still juveniles. And I think that in trying to eventually help these young men that these records should be made available to the Probation Officers and knowledgeable to the Court, so that if they come back that all of these matters can be considered in determining what is to the best interests of the minors."

The court secondly questioned petitioners' contention that they would be subject to the stigma of an "arrest" record or would be compelled to admit that they had been "arrested" in applications for employment or college. The court pointed out that Welfare and Institutions Code section 625, under which the petitioners were temporarily detained, avoids the use of the term "arrest." Hence, they may properly deny that they had been "arrested" and thus not suffer the consequences of an "arrest."[4]

On August 24, 1970, the San Francisco Municipal Court dismissed charges against the 18-year-old for allegedly violating Penal Code section 653g. (Pen. Code, § 1385) Two days later, pursuant to Penal Code section 851.7,[5] the 18-year-old youth filed an application to seal the record of his arrest.

---

of the records by persons named in the petition, and the superior court may so order. Otherwise, except as provided in subdivision (b), such records shall not be open to inspection.

(b) In any action or proceeding based upon defamation, a court, upon a showing of good cause, may order any records sealed under this section to be opened and admitted into evidence. The records shall be confidential and shall be available for inspection only by the court, jury, parties, counsel for the parties, and any other person who is authorized by the court to inspect them. Upon the judgment in the action or proceeding becoming final, the court shall order the records sealed."

References hereinafter to section 781, without mention of any code, are to the quoted section.

[4]The trial court, however, indicated that it would not rely upon this question of terminology in ruling upon the constitutionality of section 781.

[5]Penal Code section 851.7 provides:

"(a) Any person who has been arrested for a misdemeanor, with or without

Since section 851.7 contains no waiting period for sealing misdemeanor arrest records of youths who are under 21 years old and whose charges in criminal proceedings are dismissed, the San Francisco Municipal Court ordered that all official records of his arrest be sealed on September 3, 1970. In this mandate proceeding we consider whether the record of petitioners' detention should also be sealed.[6]

2. ■ *The Juvenile Court Law protects a juvenile who has been detained but who has never been the subject of wardship proceedings from the disclosure of his "arrest" or "detention" record to employers or other third parties and from the grave consequences of such a "juvenile record."*

In the present proceedings petitioners seek an order of the court sealing the records of their short, and apparently unwarranted detentions. Primarily they hope to relieve themselves of the obligation of disclosing this "detention" or "arrest" in applications for college, employment, military service,

a warrant, while a minor, may, during or after minority, petition the court in which the proceedings occurred or, if there were no court proceedings, the court in whose jurisdiction the arrest occurred, for an order sealing the records in the case, including any records of arrest and detention, if any of the following occurred:

"(1) He was released pursuant to paragraph (1) of subdivision (b) of Section 849.

"(2) Proceedings against him were dismissed, or he was discharged, without a conviction.

"(3) He was acquitted.

"(b) If the court finds that the petitioner is eligible for relief under subdivision (a), it shall issue its order granting the relief prayed for. Thereafter, the arrest, detention, and any further proceedings in the case shall be deemed not to have occurred, and the petitioner may answer accordingly any question relating to their occurrence.

"(c) This section applies to arrests and any further proceedings that occurred before, as well as those that occur after, the effective date of this section.

"(d) This section does not apply to any person taken into custody pursuant to Section 625 of the Welfare and Institutions Code, or to any case within the scope of Section 781 of the Welfare and Institutions Code, unless, after a finding of unfitness for the juvenile court or otherwise, there were criminal proceedings in the case, not culminating in conviction. If there were criminal proceedings not culminating in conviction, this section shall be applicable to such criminal proceedings if such proceedings are otherwise within the scope of this section. . . ."

References hereinafter to section 851.7, without mention of any code, are to the quoted section.

[6]Both parties apparently agree that mandate is the proper remedy in the present case in which "the issues presented are of great public importance and must be resolved promptly." (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593]; see *San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 944-945 [92 Cal.Rptr. 309, 479 P.2d 669]; *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 773 [87 Cal.Rptr. 839, 471 P.2d 487]; *McMahon* v. *Municipal Court* (1970) 6 Cal.App.3d 194, 201 [85 Cal.Rptr. 782].)

business licenses, insurance, and other applications that line the threshold of future opportunities. We believe, however, that sealing is unnecessary to achieve the practical relief they seek and that such relief may rest upon the provisions, and legislative policy of confidentiality, of the Juvenile Court Law.

The purpose of the Juvenile Court Law has long been "to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the State. . . ." (Welf. & Inst. Code, § 502.) ■ The process of the juvenile court involves determination of the needs of the child and society, provision for guidance and treatment for the juvenile, and protection of the child from punishment and stigma.

In recent years the courts, while preserving the beneficial aspects of the juvenile process, have held that certain procedural protections must be observed in order to guarantee the fundamental fairness of juvenile proceedings. (*In re Winship* (1970) 397 U.S. 358, 365-367, 372-374 [25 L.Ed.2d 368, 375-376, 380-384, 90 S.Ct. 1068]; *In re Gault* (1967) 387 U.S. 1, 12-14, 74 [18 L.Ed.2d 527, 537-539, 572, 87 S.Ct. 1428]; *Kent* v. *United States* (1966) 383 U.S. 541, 554-556 [16 L.Ed.2d 84, 93-94, 86 S.Ct. 1045]; *Joe Z.* v. *Superior Court* (1970) 3 Cal.3d 797, 801-802 [91 Cal.Rptr. 594, 478 P.2d 26]; *In re William M.* (1970) 3 Cal.3d 16, 25-26 & fn. 17 [89 Cal.Rptr. 33, 473 P.2d 737].) *Gault, Winship* and the other decisions which insure such procedural fairness in juvenile proceedings do not, however, suggest a surrender of the salutary protections of the juvenile court system. ■ As we observed in *In re Dennis M., supra,* 70 Cal.2d 444, 456, "even after *Gault*" juvenile court proceedings "retain a *sui generis* character" and are "conducted for the protection and benefit of the youth in question."

In order to protect the juvenile from the stigma of criminality often attached to adult penal proceedings, the Legislature has carefully avoided the use of the term "arrest" for the type of detention to which the petitioners were subjected in the present case. Welfare and Institutions Code section 625 provides that juveniles are not subject to "arrest," but may only be taken into "temporary custody." The basic procedures of the juvenile court, as set forth in sections 600 through 660 of the Welfare and Institutions Code, similarly avoid the term "arrest."[7] Section 503 declares that juvenile

---

[7]Welfare and Institutions Code sections 625 ("temporary custody"); 626 ("temporary custody"); 628 ("temporary custody," "detention"); 630 ("detention," "custody"); 631 ("taken into custody"); 632 ("detention hearing"); 633 ("detention"); 635 ("detained," "custody"); 636 ("detained"); 640 ("detained"); 641 ("taken into temporary custody"); see also section 506 ("taken into custody"); 507 ("detain"); 508 ("detained"); 509 ("place of confinement").

wardship "shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding." Although the courts[8] and the Legislature[9] have not been completely consistent in their terminology, the legislative purpose and intent to spare juveniles from the untoward and unjustified consequences of an "arrest" record appears clear.[10] (See *In re Winship, supra,* 397 U.S. 358, 365-367 [25 L.Ed.2d 368, 375-377]; *In re Colar* (1970) 9 Cal.App.3d 613, 617 [88 Cal.Rptr. 651].)

Furthermore, several sections explicitly reflect a legislative judgment that rehabilitation through the process of the juvenile court is best served by the preservation of a confidential atmosphere in all of its activities. Section 827 carefully prohibits the inspection of any "petition filed in any juvenile

[8]We have generally endeavored to avoid the use of the term "arrest" in cases in which the technically appropriate phrase would be "detain" or "take into temporary custody." (See *In re William M., supra,* 3 Cal.3d 16, 19; *In re Ricky H., supra,* 2 Cal.3d 513, 517-518.) We have not been entirely successful in avoiding the term "arrest" largely because the common parlance would suggest that "temporary custody," "detention" and "arrest" may be used interchangeably. (See *Joe Z.* v. *Superior Court, supra,* 3 Cal.3d 797, 800; *In re Dennis M., supra,* 70 Cal.3d 444, 448.) It is precisely this common parlance which would result in stigmatizing the detained juvenile with an "arrest" record despite the legislative intent to remove such stigma. We have thus recognized the common parlance in protecting the juvenile from the dissemination of a "detention" or "arrest" record.

[9]Welfare and Institutions Code section 663 refers to the procedures for obtaining an "arrest" warrant for a minor. (See *In re William M., supra,* 3 Cal.3d 16, 19-20, fn. 1.) The petitioners in the present case, however, were placed in "temporary custody" by a police officer without a warrant pursuant to Welfare and Institutions Code section 625 et seq. Section 504 speaks of "an arrest or taking into custody of a minor." And section 781 also mentions "records of arrest." Since we conclude that neither the juvenile court nor the minor need disclose detention and arrest records, and since the legislative intent to avoid stigmatizing the youth with an "arrest" record seems clear, we do not attempt to sort out these latent inconsistencies in terminology.

[10]The Governor's Special Study Commission on Juvenile Justice recognized that "a juvenile arrest record has proven in many cases to be a serious handicap to a person in life, especially if a felony charge is involved." (Report of the Governor's Special Study Commission on Juvenile Justice, Part II—A Study of the Administration of Juvenile Justice in California (1960) p. 110.) In order to effectuate the "protective and rehabilitative philosophy of the juvenile court law," the commission recommended that juvenile court proceedings be confidential. (Report of the Governor's Special Study Commission on Juvenile Justice, Part I—Recommendations for Changes in California's Juvenile Court Law (1960), pp. 12, 34, 47-48.) Of course, regardless of the legislative intent, "It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime—'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' the person." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 16 [20 L.Ed.2d 889, 902, 88 S.Ct. 1868]; see also *In re Winship, supra,* 397 U.S. 358, 365 [25 L.Ed.2d 368, 375], *Davis* v. *Mississippi* (1969) 394 U.S. 721, 726-727 [22 L.Ed.2d 676, 680-681, 89 S.Ct. 1394]; *People* v. *Arnold* (1967) 66 Cal.2d 438, 445-449 [58 Cal.Rptr. 115, 426 P.2d 515].)

court proceeding, reports of the probation officer, and all other documents filed in any such case" by anyone other than court personnel, the juvenile, his parents, and his attorney, except with the express approval of the juvenile court judge.[11] Section 676 provides that juvenile court proceedings are not open to the public. And section 781 insures that a juvenile may obtain an order, five years after his detention or when he becomes 21, which seals his juvenile court record even from inspection by juvenile court personnel and which requires the destruction of all records pertaining to the case in the custody of "any other agencies, including law enforcement agencies, and public officials as petitioner alleges, in his petition, to have custody of such records."[12]

---

[11]Welfare and Institutions Code section 827 provides: "A petition filed in any juvenile court proceeding, reports of the probation officer, and all other documents filed in any such case or made available to the probation officer in making his report, or to the judge, referee or other hearing officer, and thereafter retained by the probation officer, judge, referee, or other hearing officer, may be inspected only by court personnel, the minor who is the subject of the proceeding, his parents or guardian, the attorneys for such parties, and such other persons as may be designated by court order of the judge of the juvenile court upon filing a petition therefor." All references hereinafter to section 827 without designation of any code are to the quoted provision.

[12]The term "sealing" is ambiguous. It could mean that records are merely closed to inspection or it could signify that records are physically destroyed. (Kogon & Loughery, *Sealing and Expungement of Criminal Records—The Big Lie* (1970) 61 J. Crim. L.C. & P.S. 378, 379-380.) Section 781 envisions that a sealed record may be opened for inspection upon the petition of the juvenile concerned, so we must conclude that the provision merely meant that records in the custody of the juvenile court may be closed to inspection. For all other agencies, however, the provision clearly contemplated that records of the case be returned to the juvenile court for safekeeping or be destroyed in order to protect the juvenile from any risk of unauthorized disclosure. (See Comment (1967) 3 Cal. Western L.Rev. 121, 126.) Section 781 provides that the juvenile court shall send its sealing order to "each agency and official named" in the petition for sealing, "and each such agency and official shall seal records in its custody *as directed by the order*, shall advise the court of its compliance, and thereupon shall seal the copy of the court's order for sealing of records that it or he received." (Italics added.) Hence, at the conclusion of the sealing process, no agency in this state, other than the juvenile court which ordered sealing, may retain any information which might provide a link between a particular juvenile and any contact with the juvenile court. A California court, however, may not be able to compel the Federal Bureau of Investigation to destroy detention records it has received from California law enforcement authorities. (Note, (1966) 79 Harv. L.Rev. 775, 800-801.) Nevertheless, after a California court has issued a sealing order under section 781, the juvenile record loses all force and effect, and the juvenile may file an action in federal court to have the record removed from FBI files. (See *Menard* v. *Mitchell* (1970) 430 F.2d 486, 489, 494-495 [139 App.D.C. 113]; *Morrow* v. *District of Columbia* (1969) 417 F.2d 728 [135 App.D.C. 160]; *Wheeler* v. *Goodman* (W.D.N.C. 1969) 306 F.Supp. 58; *United States* v. *Kalish* (D. Puerto Rico 1967) 271 F.Supp. 968. See also *Irani* v. *District of Columbia* (Mun.App.D.C. 1971) 272 A.2d 849 [8 Crim.L.Rep. 2366]; *Gonzalez* v. *Mailliard* (N.D. Cal. 1971) F.Supp. [No. 50424 SAW] (Wiegel, J., three-judge court.)

■ These factors justify the conclusion that the Juvenile Court Law and particularly Welfare and Institutions Code sections 625, 676, 781, and 827 establish the confidentiality of juvenile proceedings and vest the juvenile court with exclusive authority to determine the extent to which juvenile records may be released to third parties. The juvenile court must be in a position to effect the appropriate treatment for each individual juvenile. (See *Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709, 714-715; *In re William M., supra,* 3 Cal.3d 16, 30; *In re Dennis M., supra,* 70 Cal.2d 444, 455-456.) Obviously, if prospective employers and sometimes third parties may obtain information as to juvenile records without the permission of the juvenile court and may use these records to deny opportunities to young persons,[13] the rehabilitative efforts of the juvenile court will often be thwarted.[14]

At present this legislative policy of confidentiality suffers erosion, in practical terms, by the omnipresent inquiry "Have you ever been arrested?" This question appears on practically every application for employment, college admission, business license or other undertaking open to young persons.[15] Indeed some employers often require a prospective employee

---

[13]"The search for a job may be even more discouraging when the young person has a delinquency record. There is evidence that many employers make improper use of records. A juvenile's adjudication record is required by the law of most jurisdictions to be private and confidential; in practice the confidentiality of these records is often violated. The employment applications may require the applicant to state whether he was ever arrested or taken into custody, or employers may ask juvenile applicants to sign waivers permitting the court to release otherwise confidential information." (President's Com. on Law Enforce. and Admin. of Justice, Task Force Rep.: Juvenile Delinquency and Youth Crime (1967) 54; Comment (1970) 6 Harv. Civ.Lib.-Civ.Rights L. Rev. 165, 174.)

[14]Note, *Sealing of Juvenile Records* (1969) 54 Minn.L.Rev. 433, 434-438.

[15]Some "employment applications ask whether the applicant has been 'detained by the police' or 'held' for any offense." (Baum, *Wiping Out a Criminal or Juvenile Record* (1965) 40 State Bar.J. 816, 826; Comment, *Criminal Records of Arrest and Conviction: Expungement from the General Public Access* (1967) 3 Cal. Western L.Rev. 121, 127; Booth, *The Expungement Myth* (1963) 38 L.A. Bar Bull. 161, 164; Comment, *Guilt by Record* (1965) 1 Cal. Western L.Rev. 126, 127-128; Note, *Sealing of Juvenile Records, supra,* 54 Minn. L. Rev. 433, 451, 453-454.) One federal court, however, has enjoined a private employer from requesting information as to an applicant's arrest on the ground that such questions constitute a violation of the Civil Rights Act of 1964. (*Gregory* v. *Litton Systems, Inc.* (C.D.Cal. 1970) 316 F.Supp. 401, 403-404; Comment, *Arrest Records as a Racially Discriminatory Employment Criteria* (1970) 6 Harv. Civ. Lib.-Civ. Rights L.Rev. 165; see Senate Interim Committee on General Research, Subcommittee on Judiciary Hearings on Dissemination of Criminal Records (Oct. 22, 1970); Gough, *The Expungement of Adjudication Records of Juvenile and Adult Offenders: A Problem of Status,* 1966 Wash.U.L.Q. 147, 155-156, 169-170; Gov. Code, §§ 18935, 19572.)

to permit actual inspection of his juvenile court files so that the employer may make his own check of the juvenile's history. (See *In re Smith* (Family Ct. 1970) 310 N.Y.S.2d 617, 619.) More often, however, employers and others will simply reject an application from anyone who admits to the fact that he has been the subject of juvenile court proceedings.[16]

We recognize that the exposure of innocent juveniles who have thus been "detained" but never brought before a juvenile court, does find some support in an Attorney General's opinion which interprets the pertinent statutory provisions to require the juvenile to answer these inquiries as to prior arrests in the affirmative. (43 Ops.Cal.Atty.Gen. 288 (1964).)[17] In the present proceeding, however, the Attorney General has changed his position and concluded "that any minor under the age of 18 years old who is taken into custody by a peace officer for a violation of a criminal law has not been 'arrested.' This would be true whether the minor is later released by the police, with or without being 'booked' at the police station, whether he is referred to the Juvenile Court, or whether he is ultimately declared a ward of the Juvenile Court. In the present case, therefore, it would be inaccurate to declare that petitioners were 'arrested' or that they have an 'arrest record.' "

We concur in the Attorney General's present position in so far as it recognizes that a youth who has been thus subjected to juvenile court proceedings may deny that he has been arrested. By using the terms "temporary custody" and "detention" rather than "arrest" the Legislature obviously sought to insulate the juvenile from the consequences of an "arrest record." The word "detained," however, has come to involve only slightly less stigma than the term "arrest" as applied to adults. (See *In re Gault, supra,* 387 U.S. 1, 23-24 [18 L.Ed.2d 527, 544]; *In re Contreras* (1952)

---

[16]Schwartz & Skolnick, Two Studies in Legal Stigma in Society and the Legal Order (1970) pp. 568, 573-574; Note, *Juvenile Delinquents: The Police, State Courts, and Individualized Justice* (1966) 79 Harv.L.Rev. 775, 801 ("[T]he general public has a pronounced tendency to view even arrest by the police—let alone actual appearance in court—as conclusive evidence of guilt, irrespective of the result of the adjudication."); Comment, *Guilt by Record, supra,* 1 Cal. Western L.Rev. 126, 127-130.

[17]We cannot underestimate the grave social problem caused by juvenile detentions which do not result in an adjudication of wardship. Of the 389,394 juvenile detentions in California in 1969, 158,382 were not referred to the juvenile court, probation department or other agency (Bureau of Criminal Statistics, Crime and Delinquency in California (1969) p. 145.) Hence, 231,394 youths acquired "arrest" or "detention" records, although no further proceedings were conducted in their cases. Of the cases which were referred to juvenile courts and probation departments, petitions were filed in 60,115 cases. (Judicial Council of California, Annual Report (1970) p. 144 (fiscal year data).) In other words, almost a third of a million young persons may be subject to the grave stigma of a "juvenile record" without having been found responsible for any anti-social conduct.

109 Cal.App.2d 787, 789-790 [241 P.2d 631].) A juvenile who states that he has been either detained or arrested will be subjected to economic and other sanctions. (See Gough, *The Expungement of Adjudication Records of Juvenile and Adult Offenders: A Problem of Status,* 1966 Wash. U. L.Q. 147, 170.) Thus, in order to effectuate the legislative policy of confidentiality and the juvenile court's purpose of protective rehabilitation, we believe Welfare and Institutions Code sections 676, 781, and 827 should be interpreted to permit the juvenile, who has been temporarily detained by the authorities and subsequently released without further proceedings, not only to deny that he has been arrested, but, also, to deny that he has been detained or otherwise subjected to juvenile court proceedings.

■ Similarly, the juvenile court need not disclose that any juvenile has been detained when he has never been brought before the court. The San Francisco Juvenile Court responds to inquiries from third parties as to youths who have not been found wards of the court by stating that they were "never officially known to the San Francisco Juvenile Court." Furthermore, the police and probation departments of San Francisco do not reveal detention records to third parties without court order. Welfare and Institutions Code section 827 reposes in the juvenile court control of juvenile records and requires the permission of the court before any information about juveniles is disclosed to third parties by any law enforcement official.

■ The police department of initial contact may clearly retain the information that it obtains from the youths' detention, but it must receive the permission of the juvenile court pursuant to section 827 in order to release that information to any third party, including state agencies.[18] Police

---

[18]As the Governor's Special Study Commission on Juvenile Justice recognized, "Much is made of the confidentiality of juvenile court records to avoid stigmatizing the juvenile offender, but it is more often the CII and FBI arrest record that haunts him in later years." (Report of the Governor's Special Study Commission on Juvenile Justice, Part I—Recommendations for Changes in California's Juvenile Court Law (1960) p. 47; see Reid, *The Presumption of Guilt* (Jan. 16, 1971), The New Republic, at pp. 15-16.) Although the Legislature did not adopt all the commission's statutory recommendations for this dissemination problem in Welfare and Institutions Code section 504, it did provide the juvenile court authority to control juvenile court records under section 827 so as to deal with the problem. For example, to protect a juvenile, who was detained but not placed on informal probation (Welf. & Inst. Code, § 654) or made the subject of any further proceedings, from acquiring an "arrest record" with the CII and FBI and to preserve the juvenile court's power to protect the juvenile from the stigma of juvenile detention, section 827 authorizes the juvenile court to prevent the dissemination of such records of juvenile detention to the CII and FBI. Once a juvenile has been declared a ward of the court, however, the juvenile court may designate the CII and FBI as proper recipients under section 827 of relevant information about the minor. In short, without describing each factual situation in which dissemination would be appropriate or inappropriate, section 827 authorizes the juvenile court to establish procedures, by court rules or on a case-by-case basis, to regulate the dissemination of juvenile court records so as to protect the juvenile from potential abuse of detention records and to provide the needed care and guidance for juveniles.

records in this regard become equivalents to court records and remain within the control of the juvenile court. (See Winslow, *In the Matter of Juvenile Court Proceedings* (1967) 14 Crime & Delinquency 261, 262-267.)

Since the entire Juvenile Court Law places the responsibility of providing care and protective guidance for youths upon the juvenile court, section 827 provides the means for assuring to the juvenile court the authority to fulfill that responsibility without interference by third parties. In determining what information should be released, the juvenile court is in a position to determine whether disclosure would be in the best interests of the youth. The presumption of innocence, the legislative policy of confidentiality encompassing juvenile proceedings, and the hazard that the information will be misused by third parties fully justify the juvenile court's refusal to disclose information about juvenile detentions.

We cannot accept the contention that the juvenile court's policy of confidentiality fails to warn the community about possibly dangerous youths[19] and permits the juvenile to "lie" about his contacts with the juvenile court. The Legislature has made these policy decisions in section 827 in favor of confidentiality. Furthermore, we believe the relevant policy considerations certainly support that legislative determination. A young person who has been detained but has never been the subject of a petition for wardship certainly cannot be presumed a danger to society. If a particular youth does present a danger to the community or himself, the juvenile court possesses adequate means for dealing with the problem. (Cf. *In re Gladys R., supra,* 1 Cal.3d 855, 865-867; *Johnson* v. *State of California* (1968) 69 Cal.2d 782, 795-797 [73 Cal.Rptr. 240, 447 P.2d 352].) ■ If a youth has been merely detained *without* being declared a ward of the court, however, we must presume that he is innocent and does *not* present a danger to society. The risk that third parties will misuse information about juvenile detention far outweighs any speculative benefit to third parties. Finally, the juvenile's negative response to inquiries about detentions or arrests is tantamount to saying that this information is confidential and must be obtained, if at all, from the juvenile court.

Thus, the Juvenile Court Law affords much of the protection against abuse of detention records by an employer or other third parties which petitioners seek by the sealing of their records pursuant to section 781. As we have stated at the outset, however, petitioners contend that section

---

[19]Baum, *Wiping Out a Criminal or Juvenile Record* (1965) 40 State Bar J. 816, 824; Kogon & Loughery, *Sealing and Expungement of Criminal Records—The Big Lie* (1970) 61 J. Crim.L.C. & P.S. 378, 385; Note (1967) 67 Colum. L.Rev. 281, 288; Note, (1957) 27 Temp. L.Q. 441, 451-452.

781 violates the equal protection and due process clauses because it does not provide for immediate sealing of detention records. We turn to these issues.

3. ■ *The five-year waiting period of Welfare and Institutions Code section 781 does not violate the equal protection or due process clause.*

Welfare and Institutions Code section 781 provides that a juvenile record —including information as to arrest, detention, and wardship—may be sealed when the juvenile reaches his majority or upon the expiration of five years from the date on which the jurisdiction of the juvenile court terminates. In the present case no petition for wardship was ever filed so that the jurisdiction of the juvenile court terminated on the day the petitioners were released by the probation officer. Since one youth was 15 years old at the time of his detention, he will be required to wait five years, until April 15, 1975, to obtain an order sealing his record. The 16-year-old youth will reach his 21st birthday in 1974 and will then be able to petition for the sealing of the record.

Section 851.7 of the Penal Code provides that any minor who has been arrested for a misdemeanor, treated as an adult, but not convicted of the offense, may at any time petition the court to order that the record in the case be sealed. Since Penal Code section 851.7, which permits immediate sealing, does not apply to "any person taken into custody pursuant to section 625 of the Welfare and Institutions Code, or to any case within the scope of Section 781" of such code, petitioners cannot obtain any relief under it. Nevertheless, the 18-year-old, who was arrested at the same time as petitioners, but who was not referred to juvenile court, has successfully petitioned for an order sealing the record of his case pursuant to section 851.7.

Petitioners contend that the only difference between the older youth and themselves rests simply upon age, and that, at least, if no adjudication occurs, a distinction based solely upon this chronological factor constitutes an arbitrary and invidious discrimination. Petitioners particularly argue that the difference between immediate sealing for minors under section 851.7 and the lengthy waiting period for sealing under section 781 violates the equal protection clause of the Fourteenth Amendment. Petitioners point out that the five-year waiting period occurs at precisely the time at which most juveniles first apply for jobs or attempt to obtain entrance to higher educational institutions. Although all the commentators who have discussed the subject have praised California for its comprehensive sealing remedy, they

also unanimously criticize the five-year waiting period as far too long.[20]

Section 781, however, does not frame a provision foreign to the Juvenile Court Law's design of protective rehabilitation of the juvenile and its necessary corollary of confidentiality.  ▮  "Equal protection does not require that all persons be dealt with identically" (*Baxstrom* v. *Herold* (1966) 383 U.S. 107, 111 [15 L.Ed.2d 620, 624, 86 S.Ct. 760]); it permits a state to "provide for differences so long as the result does not amount to a denial of due process or an 'invidious discrimination.'" (*Douglas* v. *California* (1963) 372 U.S. 353, 356 [9 L.Ed.2d 811, 814, 83 S.Ct. 814].) ▮ "The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645]; see *In re Antazo* (1970) 3 Cal.3d 100, 110 [89 Cal.Rptr. 255, 473 P.2d 999].)

A legitimate and substantial interest supports the policy of permitting juvenile court personnel to retain information about a juvenile's detention, even when such detention does not result in a wardship proceeding. In such a case the retention of the record of detention still rests upon a rehabilitative purpose. As the juvenile court in the instant matter pointed out, the detention record will assist the court's personnel in assessing any later conduct by the juvenile. A single incident may not reveal a pattern of behavior which would require action by the juvenile court. But the past record of the juvenile with the juvenile court may enable a probation officer to recognize a development which requires informal probation, a petition for wardship, or other appropriate treatment. (See *In re Dennis M.*, *supra*, 70 Cal.2d 444, 456; *In re Donna G.* (1970) 6 Cal.App.3d 890, 895 [86 Cal.Rptr. 421].)

Such rehabilitative need for retaining arrest records does not pertain to the case of a minor who has been dealt with as an adult in the criminal

[20]Boches, *Juvenile Justice in California: A Re-evaluation* (1967) 19 Hastings L.J. 47, 99-100; Gough, *The Expungement of Adjudication Records of Juvenile and Adult Offenders: A Problem of Status,* 1966 Wash. U. L.Q. 147, 175-176; Bay Area Social Planning Council, The San Francisco Juvenile Court, The Law (1968) pp. 115-116; U.S. Department of Health, Education and Welfare. Family and Juvenile Court Acts (1969) § 48 (recommendation for two-year waiting period); Note, *Sealing of Juvenile Court Records* (1969) 54 Minn. L.Rev. 433, 448 (recommendation for three-year waiting period); Note, *Juvenile Delinquents: The Police, State Courts, and Individualized Justice* (1966) 79 Harv. L.Rev. 775, 800. In 1967 the Legislature enacted, and the Governor signed, a provision which would have repealed the five-year waiting period for sealing and would have permitted the juvenile court to seal a minor's record when it determined that the juvenile had achieved rehabilitation, but the provision was chaptered-out and has not been re-enacted. (Gov. Code, § 9605; Boches, *Juvenile Justice in California: A Re-evaluation,* supra, 19 Hastings L.J. 47, 100.)

courts.[21] The adult criminal courts neither perform the special rehabilitative functions of the juvenile court nor provide the particular procedures for protective confidentiality of the juvenile court. Thus, the Legislature has reasonably provided to minors who are treated as adults in criminal courts the immediate sealing of any arrest record under Penal Code section 851.7.

Furthermore, we must reject petitioners' contention that the different provisions of the two sealing statutes—sections 851.7 and 781—turn solely on the question of age. The availability of the remedy depends upon whether the juvenile is treated as an adult or as a juvenile offender. ▮ The juvenile court exercises exclusive jurisdiction with respect to all minors under the age of 16; it may not transfer such a case to an adult court. (*In re Gladys R., supra,* 1 Cal.3d 855, 862.) ▮ If the minor is 16 or 17 years of age, the juvenile court still retains exclusive jurisdiction, but the case may under some circumstances be transferred to an adult court. (Welf. & Inst. Code, §§ 603, 707; see *Jimmy H.* v. *Superior Court, supra,* 3 Cal. 3d 709, 715.) ▮ Adult and juvenile courts exercise concurrent original jurisdiction in the case of minors between the ages of 18 and 21. (Welf. & Inst. Code, §§ 604, 707.) If a 16 year old is treated as an adult offender, the remedial provisions of Penal Code section 851.7 would be available if the charges do not culminate in a conviction. If an 18 year old is treated as a juvenile offender, the remedial provisions of Welfare and Institutions Code section 781 would apply. ▮ Hence, the application of sections 851.7 and 781 does not devolve upon any invidious discrimination between youths of different ages. (See *In re S.A.* (1970) 6 Cal.App.3d 241, 245-246 [85 Cal.Rptr. 775]; *McMahon* v. *Municipal Court* (1970) 6 Cal.App. 3d 194, 200 [85 Cal.Rptr. 782].)

To summarize, we believe that the Legislature in enacting the Juvenile Court Law clearly intended to safeguard juveniles from the adverse use of arrest and detention records. ▮ We hold that the sections of the Juvenile Court Law, pursuant to its underlying policy of confidentiality, provide that a juvenile, who has been temporarily detained by the authorities and subsequently released without further proceedings, may deny having

---

[21]As the United States Supreme Court has observed, "The mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct. [Footnote: Arrest, by itself, is not considered competent evidence at either a criminal or civil trial to prove that a person did certain prohibited acts. Cf. Wigmore, Evidence, section 980a.] An arrest shows nothing more than that someone probably suspected the person apprehended of an offense. When formal charges are not filed against the arrested person and he is released without trial, whatever probative force the arrest may have had is normally dissipated." (*Schware* v. *Board of Bar Examiners* (1957) 353 U.S. 232, 241 [1 L.Ed.2d 796, 802, 77 S.Ct. 752] (reversing exclusion from practice of law because of three arrests without adjudication); see *Grudt* v. *City of Los Angeles* (1970) 2 Cal.3d 575, 590-593 [86 Cal.Rptr. 465, 468 P.2d 825] (arrest records inadmissible to show bias.)

been arrested, detained, or otherwise subjected to juvenile court proceedings. To exorcise reference to arrest alone would not suffice if an equivalent word could be substituted. The prohibition must therefore cover any synonym of "arrest." ██ At the same time we hold that the records may be preserved for the use of juvenile court personnel for individualized guidance and rehabilitation of juveniles.

No one could reasonably find a desirable social purpose in stigmatizing with the brand of an "arrest" or a "detention" the juvenile whom the authorities have taken into custody but released. To take the child into custody may itself cause him some emotional harm, but to expand that procedure into an "arrest" or "detention" must cause him a life-time disservice. No statute compels that result; certainly, the Juvenile Court Law does not. ██ As we have explained, that law abstains from the use of such terminology; indeed, the main reason for casting a protective cloak of confidentiality over the juvenile court proceedings is to prevent the exposure of the child to the ignominy that comes from such terms as "arrest" or "detention." That the authorities take the child into custody should not produce the evil fruit of injury to the child.

The alternative writ is discharged and the petition for writ of mandate is denied.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

The petition of the real party in interest for a rehearing was denied June 17, 1971, and the opinion was modified to read as printed above.