[No. G040473. Fourth Dist., Div. Three. Mar. 3, 2009.]

R.S., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
M.L., Real Party in Interest.

**COUNSEL**

Correen Ferrentino for Petitioner.

No appearance for Respondent.

John A. Rosenbaum for Real Party in Interest.

**OPINION**

**O'LEARY, J.**—In R.S.'s petition for writ of mandate, he seeks to vacate the juvenile court's May 29, 2008 order permitting disclosure of a Child Abuse Services Team (CAST) tape contained in R.S.'s juvenile court file. The tape shows a CAST member's interview with R.S.'s seven-year-old victim. R.S. argues no good cause exists to justify its release; the information it contains is capable of being obtained from other sources, i.e., the victim's treating therapist; and disclosure of the tape will not only affect his future employment and his college aspirations, but would "severely retrogress [his] ability to interact socially." Moreover, R.S. contends the CAST tape should not be disclosed because there is no legal action pending against him by the victim. We conclude the court did not abuse its discretion in disclosing the CAST tape pursuant to a protective order, and accordingly, we deny the petition.

## FACTUAL AND PROCEDURAL HISTORY

In December 2007, R.S. was found to be a ward of the court pursuant to Welfare and Institutions Code, section 602,[1] after pleading guilty to performing lewd acts on a seven-year-old child. The court also issued a protective order on behalf of the victim against R.S.[2]

The real party in interest (who is the victim's father and legal guardian) retained attorney John A. Rosenbaum to pursue monetary damages against the parents of R.S. through their insurer. The petition asserts no legal action has been filed against R.S., or his parents, and since then we have not been notified of a lawsuit. Rosenbaum contends he has attempted to negotiate a settlement with the insurance company (1) to avoid the publicity generated by litigation, and (2) to avoid a trial that would be traumatic and particularly detrimental to the victim, who is undergoing therapy.

However, the insurance company purportedly refused to pursue further negotiations unless it is permitted to view a copy of the victim's CAST tape. Although we have not been given any reason for this particular requirement, we surmise it may have something to do with assessing the victim's credibility as a potential witness if the matter ultimately proceeds to trial.

In January 2008, the victim filed a motion pursuant to sections 827 and 828 seeking disclosure of the police report and the CAST tape, both of which were contained within R.S.'s juvenile court file. R.S. filed an opposition. At the hearing held on May 29, 2008, the court advised the parties it had viewed the CAST tape. It granted the victim's motion in part by allowing for disclosure of the CAST tape, but not the police report.

The court found section 827 permitted the parents of the victim, and others who were specifically designated by the court, to view the tape pursuant to a protective order. It reasoned, "I have to say I'm kind of at a loss to how a tape-recorded interview of a child that's in the possession of the government should be kept away from that child and his parents. I've seen the CAST interview tape; I've reviewed it. And as you're familiar, I'm sure, generically it's a sympathetic interviewer asking a child in a setting that tries to be nonthreatening about the facts that underlie a complaint that's been made. And so the only person present is the child and the interviewer. And I'm kind of at a loss to see how I can deny the parents' rights to an interview of their

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] On the court's own motion and for good cause, we take judicial notice of the juvenile court file in this matter, and the CAST tape recording, which is contained within R.S.'s juvenile court file. (§ 827, subd. (a)(1)(A); Evid. Code, § 452, subd. (d).)

own child. [¶] . . . I'm not so sure where your client's privacy rights, when I balance them, can tip the scales in his favor as opposed to the requesting party here."

The court added, "I'm going to concern myself with balancing the interests of the parties and the statutory scheme that I'm constrained by here. [¶] . . . I think it's clear that there is a paucity of appellate guidance for somebody in my position, but I think it is also clear that what I need to do is to balance the interests of the parties here. Lawsuits can be filed anytime the courts are open. So the fact that the lawsuit hasn't been filed doesn't preclude my granting a request. But my granting the request today, which I'm going to do in a limited manner, doesn't preclude anybody from coming back to this court to ask for further information should there be further justification. The request is going to be granted with regard to the CAST tape and the CAST tape only, for the reasons that I essentially disclosed to you all when I first started talking this afternoon; and that is, I think that the [victim's parents] have a right to the tape of their [child's] interview. And balancing his interests and the parents' interest against those of [R.S.] and his parents and their privacy concerns, I think the scales tip in favor of disclosure."

The court ordered release of the CAST tape would be limited by the following protective order: "It is not to be copied in any way. It can only be disclosed to counsel and parents. [¶] . . . They are authorized to disclose its contents and to show its contents to their insurance company, and they can show it to insurance adjusters in pursuing a claim. But they're not allowed to copy it or allow it to be copied. So you have to have it in your custody, . . . Rosenbaum, and any disclosure will have to be in your offices. So it's going to remain in your possession, and at the conclusion of litigation be returned to the court."

Before the tape was released, R.S. filed a petition for writ of mandate, and requested a stay of the proceedings. We stayed the matter, and issued an alternative writ, which the trial court declined to follow. After requesting formal briefing, we set the matter for oral argument.

## DISCUSSION

*Authority of the Juvenile Court to Release Juvenile Court Records*

■ The guidelines related to the dissemination of juvenile court records are found in sections 827 and 828 and California Rules of Court, rule 5.552 (hereafter Rule 5.552). Relevant to this case, section 827 covers who has the right to access and inspect confidential juvenile records and how those records should be released. Specifically, section 827, subdivisions (a)(1)(A)

through (L), delineate the categories of persons having the right to inspect juvenile records without a court order. Section 827, subdivision (a)(1)(P), provides a juvenile case file may be inspected by "[a]ny other person who may be designated by court order of the judge of the juvenile court upon filing a petition."

■ Rule 5.552(a), concerning the "[c]onfidentiality of records," defines the juvenile case file as including: "(1) All documents filed in a juvenile court case; [¶] . . . [¶] (4) Documents relating to a child concerning whom a petition has been filed in juvenile court that are maintained in the office files of probation officers, social workers of child welfare services programs, and [Court Appointed Special Advocate] CASA volunteers; [¶] . . . [¶] (6) Documents, video or audio tapes, photographs, and exhibits admitted into evidence at juvenile court hearings."

Rule 5.552(c) provides, "With the exception of those persons permitted to inspect juvenile court records without court authorization under sections 827 and 828, every person or agency seeking to inspect or obtain juvenile court records must petition the court for authorization using *Petition for Disclosure of Juvenile Court Records* (form JV-570)." Rule 5.552(d) and (e) describe the notice and procedures that must be followed for petitions.

■ The California Rules of Court also provide guidelines for the juvenile court to consider in making its ruling: "In determining whether to authorize inspection or release of juvenile case files, in whole or in part, the court must balance the interests of the child and other parties to the juvenile court proceedings, the interests of the petitioner, and the interests of the public." (Rule 5.552(e)(4).) "If the court grants the petition, the court must find that the need for discovery outweighs the policy considerations favoring confidentiality of juvenile case files. The confidentiality of juvenile case files is intended to protect the privacy rights of the child." (Rule 5.552(e)(5).) "The court may permit disclosure of juvenile case files only insofar as is necessary, and only if petitioner shows by a preponderance of the evidence that the records requested are necessary and have substantial relevance to the legitimate need of the petitioner." (Rule 5.552(e)(6).) And finally, "If, after in-camera review and review of any objections, the court determines that all or a portion of the juvenile case file may be disclosed, the court must make appropriate orders, specifying the information to be disclosed and the procedure for providing access to it." (Rule 5.552(e)(7).) As noted by one court, these rules recognize "competing interests, including the public interest, may tip the balance in favor of disclosure." (*In re Keisha T.* (1995) 38 Cal.App.4th 220, 235 [44 Cal.Rptr.2d 822].) "While it is the intent of the Legislature that juvenile court records remain confidential, the policy of confidentiality is not absolute." (*In re R.G.* (2000) 79 Cal.App.4th 1408, 1414 [94 Cal.Rptr.2d 818].)

■ A juvenile court has broad and exclusive authority to determine whether, and to what extent, to grant access to confidential juvenile records.[3] (*In re R.G., supra,* 79 Cal.App.4th at p. 1413; *In re Keisha T., supra,* 38 Cal.App.4th at pp. 225–226, 240 [court balanced the privacy interests of children with that of the press, and concluded disclosure of information to the press would promote "public awareness and monitoring of the juvenile welfare system"].) " 'The juvenile court has both "the sensitivity and expertise" to make this determination. [Citation.]' " (*In re Elijah S.* (2005) 125 Cal.App.4th 1532, 1542 [24 Cal.Rptr.3d 16].) We review the court's decision for abuse of discretion. (*Id.* at p. 1541; *In re Keisha T., supra,* 38 Cal.App.4th at p. 225.)

We find instructive several cases discussing the juvenile court's exclusive authority to balance the interests of the parties before disclosing confidential juvenile records. In *Navajo Express v. Superior Court* (1986) 186 Cal.App.3d 981, 983 [231 Cal.Rptr. 165], the defendants in a personal injury lawsuit sought discovery of the plaintiff's juvenile records to counter a claim the plaintiff had no history of emotional problems prior to the accident. The court determined the defendants were entitled to limited access to the records, after they were reviewed by the court *in camera,* and after they were found by the court to be directly relevant to the plaintiff's claim. (*Id.* at pp. 986–987.) It rejected the plaintiff's argument the statutory provisions designed to protect him made his records not subject to discovery in a civil action brought by him. (*Id.* at p. 985.) It reasoned the provisions contemplate "that situations will exist where inspection by third parties will be permitted and puts the protection of confidentiality of the records within the discretion of the juvenile court. The purpose of preserving confidentiality can be served by not permitting inspection by the third party before an initial in camera inspection by the court." (*Id.* at pp. 985–986.)

Indeed, other courts have engaged in this same balancing of interests regardless of whether the minor whose records were being sought was a party to the pending litigation. For example, the court in *In re Keisha T.* recognized the juvenile court possessed the discretion to determine whether the contents of confidential juvenile records should be released to the press. (*In re Keisha T., supra,* 38 Cal.App.4th at p. 234; see also *T.N.G. v. Superior Court* (1971) 4 Cal.3d 767, 778 [94 Cal.Rptr. 813, 484 P.2d 981] [no action pending, but minors who had been detained by police for a few hours sought

---

[3] We note that, contrary to R.S.'s contention, there is nothing in the above provisions or case authority requiring a petitioner to exhaust other avenues for the information before filing the section 827 petition. Certainly, the juvenile court in balancing the competing interests of the parties in question should take into account the "legitimate need of the petitioner" (Rule 5.552(e)(6)), but a showing of "exhaustion" is simply not contemplated by the applicable rules. Based on our review of the record, the court fairly balanced the needs and interests of the parties.

writ of mandate from Supreme Court to have their detention records immediately sealed and expurgated]; *In re Anthony H.* (2005) 129 Cal.App.4th 495, 498 [28 Cal.Rptr.3d 575] [directing juvenile court to consider grandmother's section 827 petition, seeking disclosure of her grandson's juvenile court file, to be used in her federal civil action against county social service department for mishandling case]; *Wescott v. County of Yuba* (1980) 104 Cal.App.3d 103 [163 Cal.Rptr. 385] [juvenile court had discretion to determine whether sheriff's incident report should be released to mother who had filed a civil action against her son's friends who played Russian roulette and injured her son, although her son was not a party to the action].)

■ "These cases indicate there may be situations in which competing interests require the disclosure of some material in a juvenile court record. They all recognize it is the juvenile court that is in the best position and statutorily authorized to make the decision of whether and what material should be released." (*In re Keisha T., supra,* 38 Cal.App.4th at p. 233.) The case before us presents a situation in which the court was justified in releasing from R.S.'s juvenile records the CAST tape pursuant to a protective order. We are satisfied, from our review of the record, that the court considered the various interests and concerns of all the parties. It performed an extensive analysis under the balancing tests set forth in section 827 and Rule 5.552, and followed the protective guidelines discussed in *Navajo.*

■ Strong public policy favors the settlement of disputes. (*Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858, 871–873 [239 Cal.Rptr. 626, 741 P.2d 124]; *Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1338–1339 [6 Cal.Rptr.2d 644].) And, while we acknowledge R.S.'s need for maintaining the confidentiality of his juvenile court file, we also take into account the young victim who needs to move on from these traumatic events, and who should not have to relive them and be traumatized through the probable barrage of depositions and trial testimony that filing a civil action will bring. Moreover, it is likely less traumatic to R.S. to allow his parents' insurance company to view the taped interview under the strict restraints imposed by the court than to have R.S. endure the rigors and stigma of civil litigation.

Finally, we note R.S. should not be able to shield himself from, or to unnecessarily delay, the potential civil liability that results from his acts by hiding from them under the guise of confidentiality. Preventing release of the tape will not protect against the ultimate dissemination of the information contained within. We have viewed the CAST tape and, as noted by the juvenile court, it does not contain any information the victim would not be able to testify to at trial, or that the victim could not disseminate, if he so chooses. For all the reasons stated above, we conclude the court did not abuse its discretion when it ordered the CAST tape contained in R.S.'s juvenile file to be disclosed pursuant to a strict protective order.

## DISPOSITION

The juvenile court's order is affirmed. The petition is denied. The temporary stay order issued on June 12, 2008, is ordered dissolved. Real party in interest shall recover his costs in this writ proceeding.

Sills, P. J., and Rylaarsdam, J., concurred.

Petitioner's petition for review by the Supreme Court was denied June 10, 2009, S172511.