24 Cal.Rptr.3d 16 (2005)
125 Cal.App.4th 1532
In re ELIJAH S., a Person Coming Under the Juvenile Court Law.
Hearst Corporation, et al., Plaintiffs and Respondents,
v.
San Mateo County Human Services Agency, Defendant and Appellant.
In re Savannah R., a Person Coming Under the Juvenile Court Law.
Hearst Corporation, et al., Plaintiffs and Respondents,
v.
San Mateo County Human Services Agency, Defendant and Appellant.
Nos. A104126, A104127.
Court of Appeal, First District, Division Three.
January 27, 2005.
*18 Levy, Ram & Olson, LLP, Karl Olson, Erica L. Craven, San Francisco, for Petitioner and Respondent.
Thomas F. Casey, San Mateo County Counsel, Michael Peter Murphy, Chief *19 Deputy County Counsel and Kim Marlowe, Deputy County Counsel for Objector and Appellant.
Davis Wright Tremaine LLP, Duffy Carolan, San Francisco, for Real Party in Interest.
*17 McGUINESS, P.J.
In this consolidated appeal, the San Mateo County Human Services Agency (Agency) appeals from two orders of the juvenile court of San Mateo County (County) granting petitions for disclosure of the juvenile records of Elijah S. and Savannah R., filed pursuant to Welfare and Institutions Code section 827, subdivision (a)(2)[1] by respondents, the Hearst Corporation, doing business as the San Francisco Chronicle (the Chronicle) and the San Mateo County Times (the Times), as part of a journalistic investigation. The issue on appeal is whether section 827 permits the disclosure of juvenile records in cases involving deceased children where no formal jurisdictional petition had been filed in juvenile court. Appellant Agency contends that it does not, and the juvenile court therefore erred in granting the petition for disclosure because no petition had ever been filed with respect to either of the juveniles in question. Respondents contend that under the express terms of section 827, the juvenile court properly ordered the records released in this case regardless of the fact no formal jurisdictional petition had ever been filed.
In light of the plain language of the statute and applicable case law, we hold that the juvenile court has exclusive authority to order release of juvenile records of deceased minors who come within its jurisdiction pursuant to section 300. The juvenile court did not abuse its discretion in ordering the release of juvenile case files pertaining to the deceased minors whose records were sought in this case, subject to in camera review of those documents prior to their release and redaction of any information affecting the rights and interests of other minors. We therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Appellant Agency is the County agency with administrative responsibility for the delivery of child welfare services. As such, it is the custodian of confidential child welfare and social services records pertaining to the deceased minors, Elijah S. and Savannah R. (the minors) and their families. (§ 10850; Pen.Code, § 11167.) On August 11 and 28, 2003, the Times filed petitions pursuant to section 827 for disclosure of all Agency records and juvenile court records pertaining to the two minors. On August 19 and 20, 2003, the Chronicle did the same. In its petitions, the Chronicle alleged "on information and belief" that both minors were dependents of the juvenile court at the time of their deaths.[2]
*20 The juvenile court initially granted the petitions filed by the Times with respect to Elijah S. and by both the Times and the Chronicle with respect to Savannah R., without a hearing. However, by subsequent notice dated August 28, 2003, the juvenile court set a hearing for September 12, 2003, on the petitions regarding both minors, and ordered the Agency to bring to the hearing all documents in its possession pertaining to the two minors.[3] On September 11, 2003, the Agency filed written objections to the petitions for disclosure in both cases, arguing that section 827 did not authorize a petition to obtain juvenile case records from the Agency unless a dependency petition had been filed, even if the juvenile in question was deceased. The Agency did not demur to the petitions or dispute the allegations that both of the deceased minors came within the statutory description of children "within the jurisdiction of the juvenile court" under section 300. After the hearing on the petitions for disclosure was continued to September 25, 2003, respondents filed their response to the Agency's objections, citing decisional authority upholding the authority of juvenile courts under section 827 to control access to records of informal agency contacts with juveniles even in the absence of a formal petition establishing jurisdiction under the Welfare and Institutions Code. In reply briefing, the Agency disputed the applicability of the case authority cited by respondents, and contended that access to the records sought by respondents was only through a Public Records Act request directed to the Agency, or by court-issued subpoena.
At the hearing on September 25, 2003, the Times argued that it should be granted access to the documents with respect to Savannah R. because court files on the child's father showed that the Agency had been involved with her family from the time of her birth, and the juvenile herself had died before the filing of a jurisdictional petition in her case.[4] Counsel for the Chronicle argued that the juvenile court had both the authority under section 827 and the necessary expertise and experience to exercise its discretion to release any records with respect to the juveniles. On its behalf, the Agency introduced the testimony of Nancy Brady, a supervisor with child welfare services, to testify that the Agency had not filed a petition in the case of either Savannah R. or Elijah S., and there were no court records in either case. However, Brady did not testify that there were no Agency records with respect to the two minors. Under cross-examination, Brady testified that the County had not been preparing to file a dependency petition with respect to either Savannah or Elijah. Under questioning by the juvenile court, Brady acknowledged that the County kept paper records that the Agency had generated regarding any child until he or she reached the age of 21, and then transferred such records to computer, where they were maintained indefinitely.
At the conclusion of the hearing, the juvenile court granted respondents' petitions for disclosure of the Agency's records *21 on the deceased juveniles. The court found that under section 827 and the case law interpreting it, the juvenile court had authority to determine whether to release juvenile records regardless of whether formal jurisdictional proceedings had been initiated with respect to the juveniles in question. The court verified the existence, accessibility and extent of the subject records, and agreed to conduct an in camera review of the documents prior to release in order to redact any information that could affect the rights and interests of persons mentioned in them other than the deceased minors themselves. After initially denying the Agency's request for a stay, the juvenile court granted a 15-day stay of its order, to October 10, 2003.
The Agency timely appealed, and sought to stay the juvenile court's order pending resolution of this appeal. This court granted the Agency's petition for writ of supersedeas by order dated October 22, 2003, staying enforcement of the orders directing the release of juvenile records with respect to both Savannah R. and Elijah S.

RELEASE OF JUVENILE RECORDS OF DECEASED MINORS UNDER SECTION 827
Generally, a juvenile court has broad and exclusive authority to determine whether and to what extent to grant access to confidential juvenile records pursuant to section 827. (T.N.G. v. Superior Court (1971) 4 Cal.3d 767, 778, 94 Cal. Rptr. 813, 484 P.2d 981; In re Keisha T. (1995) 38 Cal.App.4th 220, 225-226, 44 Cal. Rptr.2d 822 (Keisha).) Review of a juvenile court's decision to release juvenile records under section 827 is for abuse of discretion. (Keisha, supra, 38 Cal.App.4th at pp. 231, 234, 44 Cal.Rptr.2d 822; In re Maria V. (1985) 167 Cal.App.3d 1099, 1103, 213 Cal.Rptr. 733 (Maria V.).) In this case, however, the Agency contends that the juvenile court exceeded its jurisdiction by granting respondents' petitions under section 827 for disclosure of records regarding the two deceased minors, because no dependency or delinquency petition had ever been filed in juvenile court on behalf of either of them. In reply, respondents argue that the juvenile court had broad authority pursuant to section 827 to order disclosure of juvenile records under the control of the Agency regardless of whether a formal dependency petition had been filed, and that subdivision (a)(2) of section 827 specifically required it to order disclosure of any juvenile records concerning Elijah and Savannah because they were both deceased. The central issue posed by the respective arguments of the parties is whether section 827 authorizes a juvenile court to order the disclosure of child welfare agency records in cases where no juvenile petition has been filed. Apparently this is an issue that has never been specifically addressed by any case authority.
Section 827 governs the granting of access to confidential juvenile records by individuals and the public. Section 827, subdivision (a)(1)(A) through (L) sets out the categories of persons with the right to inspect juvenile records without court order.[5] Aside from those categories of persons specifically listed, section 827, subdivision *22 (a)(1)(M), provides that a juvenile case file may be inspected by "[a]ny other person who may be designated by court order of the judge of the juvenile court upon filing a petition." (Italics added.) These provisions, pursuant to which members of the general public may petition the juvenile court to obtain disclosure of the juvenile case files of minors, have been "consistently interpreted to vest the juvenile court with exclusive authority to determine when a release of juvenile court records to a third party is appropriate. [Citations.] The juvenile court has both `the sensitivity and expertise' to make this determination. [Citation.]" (Keisha, supra, 38 Cal.App.4th at p. 232, 44 Cal. Rptr.2d 822, italics added; see also T.N.G. v. Superior Court, supra, 4 Cal.3d at pp. 778, 781, 94 Cal.Rptr. 813, 484 P.2d 981.)
In considering such a petition for obtaining access to juvenile case records, the juvenile court must balance the interests of the minor and those of the public, and permit disclosure only where not inconsistent with the best interests of the juvenile whose file is sought. (Keisha, supra, 38 Cal.App.4th at pp. 235-241, 44 Cal.Rptr.2d 822; § 827, subd. (a)(2), (3)(A).)[6] However, the statute provides more access to certain records in the interests of the public. Specifically, under section 827, subdivision (a)(2), juvenile case files of a deceased child "who was within the jurisdiction of the juvenile court pursuant to Section 300, shall be released to the public pursuant to an order by the juvenile court after a petition has been filed and interested parties have been afforded an opportunity to file an objection." (Italics added.)[7] Thus, where the child *23 whose records are sought has died, no weighing or balancing of interests is required; the files "shall be released" unless there is a showing that "release of the juvenile case file or any portion thereof is detrimental to the safety, protection, or physical, or emotional well-being of another child who is directly or indirectly connected to the juvenile case that is the subject of the petition." (§ 827, subd. (a)(2), italics added; see Pack v. Kings County Human Services Agency (2001) 89 Cal.App.4th 821, 827-829, 107 Cal.Rptr.2d 594.)[8]

JURISDICTIONAL DETERMINATION BY JUVENILE COURT UNDER SECTION 300
The only specifically jurisdictional requirement set out in section 827, subdivision (a)(2) with regard to the mandatory release of juvenile case files is that such files "pertain to a deceased child who was within the jurisdiction of the juvenile court pursuant to Section 300." (Italics added.) Section 300 broadly provides that "[a]ny child" who has suffered specified physical or emotional neglect or abuse  or who is at "substantial risk" of suffering such neglect or abuse in the future  "is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court." (Italics added.) The specific descriptions of children "within the jurisdiction of the juvenile court" under Section 300 include any child who has suffered, or is at substantial risk of suffering, serious physical harm, illness, emotional damage, sexual abuse, severe physical abuse, or lack of provision for support, inflicted by or at the responsibility of that child's parent or guardian.[9]
*24 Thus, a child is by definition "within the jurisdiction of the juvenile court pursuant to Section 300" if he or she is one who either has suffered or will likely suffer serious neglect or abuse, without regard to whether a section 332 dependency petition  or indeed any jurisdictional petition  has yet been filed to establish that particular child as a dependent of the juvenile court. (10 Witkin, Summary of Cal. Law (9th ed. 1989) Parent and Child, § 466, p. 509.) Like section 827, section 300 itself contains no requirement making the filing of a dependency petition a prerequisite to the exercise of juvenile court jurisdiction. To the contrary, section 300 expressly provides that the juvenile court "may adjudge" any child who is "within the jurisdiction of the juvenile court ... to be a dependent child of the court." (Italics added.) By implication, such a child may come "within the jurisdiction of the juvenile court" before the juvenile court has adjudged him or her to be a dependent child. By extension, "a deceased child who was within the jurisdiction of the juvenile court pursuant to Section 300" for purposes of section 827, subdivision (a)(2) need not have been the subject of any section 332 dependency petition for the juvenile court to have jurisdiction to release his or her records.
Left unstated by either section 300 or section 827 is the question of which party must demonstrate that a given deceased minor "was within the jurisdiction of the juvenile court" under section 300 by virtue of the fact said minor "comes within any of the ... descriptions" set out in that statute. Because this question is jurisdictional in nature, we conclude that it is the proponent of disclosure  i.e., the party filing a petition for access to confidential juvenile records under section 827  who must make that threshold jurisdictional showing. (Cf. In re Jessica C. (2001) 93 Cal.App.4th 1027, 1035-1038, 113 Cal. Rptr.2d 597; 10 Witkin, Summary of Cal. Law, supra, §§ 466, 649-660, pp. 509, 726-734.)[10]
In this case, the juvenile court did not make an express finding or determination that either of the deceased minors came within its jurisdiction pursuant to section 300. Nevertheless, the court had before it public court records reflecting Agency involvement with family members of at least one of the minors; the testimony of child welfare services supervisor Brady that the County retained any juvenile records generated by the Agency indefinitely; statements on the record by the Agency's attorney confirming its possession of records dealing with the subject deceased minors; and the actual Agency records themselves.
Most significantly, the juvenile court had before it the Agency's failure to contest the respondents' allegation that the subject minors came within the definitional descriptions set out in section 300. The record shows that respondents' petitions alleged on information and belief that the deceased minors had been within the dependency jurisdiction of the juvenile court. The Agency did not challenge the legal sufficiency of these allegations of the petitions by way of demurrer or any equivalent motion. Neither did it present any evidence demonstrating that either Elijah or Savannah was not "within the jurisdiction of the juvenile court pursuant to Section 300." The Agency's sole argument *25 has consistently been that, in the absence of the filing of a dependency petition pursuant to section 332, the juvenile court lacked jurisdiction to order the release of the minors' records under section 827, subdivision (a)(2). The Agency thereby waived any defect in the substantive allegations of respondents' petitions, and chose to litigate instead on the purely procedural issue of whether public access to its own records could be sought via section 827 in the absence of any previous dependency petition  presumably, one that would have been brought by the Agency itself. (Cf. In re Jessica C., supra, 93 Cal.App.4th at pp. 1037-1038, 113 Cal.Rptr.2d 597.)
On this record, therefore, the Agency has effectively waived any opposition to respondents' allegation that the deceased minors were within the juvenile court's section 300 jurisdiction. We conclude that in ordering the subject juvenile records to be disclosed, the juvenile court made an implied determination that the deceased minors came within the definitional descriptions enumerated in section 300, and were therefore within its jurisdiction, and that there was sufficient evidence to support this determination. (Cf. In re Athena P. (2002) 103 Cal.App.4th 617, 626-628, 127 Cal.Rptr.2d 46; In re Jessica C., supra, 93 Cal.App.4th at pp. 1036-1038, 113 Cal.Rptr.2d 597.)

EFFECT ON JUVENILE COURT JURISDICTION OF AGENCY FAILURE TO FILE PRIOR DEPENDENCY PETITION
Turning to the central issue in this case, the Agency argues that the language in section 827, subdivision (a)(2) requiring that a deceased child have been "within the jurisdiction of the juvenile court pursuant to Section 300" implies that, as a prerequisite to any juvenile court order permitting disclosure of juvenile case records, there must have been a jurisdictional finding entered pursuant to a previous section 332 dependency petition filed with regard to the deceased minor.[11] In our opinion, the Agency's statutory interpretation is incorrect.
Code of Civil Procedure section 1858 states the "general rule" for construction of statutes as follows: "In the construction of a statute ..., the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (See California Fed. Savings & Loan Assn. v. City of Los Angeles (1995) 11 Cal.4th 342, 349, 45 Cal.Rptr.2d 279, 902 P.2d 297 [office of judge neither to insert nor to omit]; Manufacturers Life Ins. Co. v. Superior Court (1995) 10 Cal.4th 257, 274, 41 Cal.Rptr.2d 220, 895 P.2d 56 [citing § 1858 as one of the "[w]ell-established canons of statutory construction" and describing it as a "mandate"].) Thus, a court "`"is not authorized to insert qualifying provisions not included and may not rewrite the statute to conform to an assumed intention which does not appear from its language."' [Citations.]" (In re Hoddinott (1996) 12 Cal.4th 992, 1002, 50 Cal. Rptr.2d 706, 911 P.2d 1381; see also Dunn-Edwards Corp. v. Bay Area Air Quality Management Dist. (1992) 9 Cal. App.4th 644, 658, 11 Cal.Rptr.2d 850 *26 ["courts are not at liberty to impute a particular intention to the Legislature when nothing in the language of the statute implies such an intention"].)
On their face, neither subdivision (a)(1)(M) nor subdivision (a)(2) of section 827 contains any language making the filing of an ancillary juvenile petition to declare a minor a dependent or ward of the juvenile court a jurisdictional prerequisite to the filing of any petition for disclosure of juvenile records. Indeed, section 827 contains no reference whatsoever to dependency petitions under section 332. If the Legislature had intended to require that a section 332 petition have been filed before a juvenile court may exercise its jurisdiction to release the records of a deceased juvenile, it could have specified that requirement in section 827, subdivision (a)(2). The fact that it did not, and that there is no language elsewhere in section 827 requiring that a section 332 petition have been filed to declare a minor a dependent of the juvenile court before the juvenile court may act to release juvenile records under section 827, strongly supports respondents' interpretation of the statute in this case. (Code Civ. Proc., § 1858; In re Hoddinott, supra, 12 Cal.4th at p. 1002, 50 Cal.Rptr.2d 706, 911 P.2d 1381; California Fed. Savings & Loan Assn. v. City of Los Angeles, supra, 11 Cal.4th at p. 349, 45 Cal.Rptr.2d 279, 902 P.2d 297.)
Our construction of the relevant statutory language finds support in the numerous provisions of the Welfare and Institutions Code that assume a child may be "within the jurisdiction of the juvenile court" pursuant to section 300 in the absence of, or prior to, the filing of a section 332 petition. Thus, section 301 specifically permits the provision of supervision programs to abused or neglected children "within the jurisdiction of the juvenile court" under section 300, "in lieu of filing" any petition for a formal judicial determination of dependency.[12] Section 302, subdivision (a) likewise provides that "[a] juvenile court may assume jurisdiction over a child described in Section 300 regardless of whether the child was in the physical custody of [one or both parents] ... at the time that the events or conditions occurred that brought the child within the jurisdiction of the court," without regard to the filing of any dependency petition or to whether the child has been adjudged a dependent of the juvenile court. (Italics added.) Similarly, under sections 305, 306, 307 and 307.5, peace officers, county probation officers and social workers may take a child into temporary custody without a warrant whenever there is "reasonable cause for believing that the minor is a person described in Section 300" and the child is in immediate need of medical care or protection from abuse or conditions *27 threatening his or her health or safety, and may thereafter deliver the child to the custody of "a community service program for abused or neglected children," without any requirement that a jurisdictional dependency petition have been filed.[13] Finally, under sections 329 and 331, a person may apply to a social worker "to commence proceedings in the juvenile court" with an affidavit alleging that a child comes "within the provisions of Section 300," after which the social worker must "immediately investigate as he or she deems necessary to determine whether proceedings in the juvenile court should be commenced," subject to juvenile court review of the social worker's decision not to initiate proceedings pursuant to a section 332 petition. Section 331 specifically provides that the juvenile court may "affirm the decision of the social worker" not to commence formal juvenile proceedings. (Italics added.)
As these statutory provisions clearly demonstrate, the Welfare and Institutions Code contemplates that a child can be "within the jurisdiction of the juvenile court pursuant to Section 300," prior to or even "in lieu of [the] filing" of a dependency petition under section 332. (§ 301, italics added.) Indeed, the duties of a juvenile court to provide welfare services to abused and neglected children within its section 300 jurisdiction, and to supervise the provision of such services by social workers and county social service agencies, extend well beyond formal dependency proceedings initiated in response to the filing of a section 332 petition. Among other things, these duties include the review and supervision of county social service agencies' investigation of suspected cases of child abuse or neglect, and such agencies' performance in deciding whether to initiate formal dependency proceedings. Although the county agencies bear the initial responsibility for such investigations, they must account to the juvenile court on the results of their investigations and the reasons for the actions they take. Thus, it is the juvenile court that bears ultimate supervisory responsibility with respect to agency contacts with and actions taken regarding children described by section 300 as "within the jurisdiction of the juvenile court." (§§ 300, 301, 302, 329, 331; cf. In re Ashley M. (2003) 114 Cal.App.4th 1, 7-8, 7 Cal.Rptr.3d 237.)[14] Pursuant to this supervisory responsibility, the records of agency contacts with such children are necessarily under the authority and jurisdiction of the juvenile court, whether or not any section 332 petition has been filed. These records are particularly relevant to determining how and whether an agency has performed its duties whenever a particular minor suspected of coming *28 within the jurisdiction of the juvenile court under section 300 dies before a decision on whether to file a dependency petition has been made.
Although there appear to be no cases directly on point, the jurisdictional authority of the juvenile court to act to release records relating to a deceased child under section 827, subdivision (a)(2), despite the absence of a previous dependency petition pursuant to section 332, is supported by decisional authority in several analogous cases. Thus, in T.N.G. v. Superior Court, supra, 4 Cal.3d 767, 94 Cal.Rptr. 813, 484 P.2d 981, the California Supreme Court upheld the authority and jurisdiction of the juvenile court to control the juvenile records of minors who had been temporarily detained by juvenile court authorities and then released without any further proceedings such as the filing of petitions for dependency or wardship. Specifically, the Supreme Court held that the provisions of the juvenile court law and the Welfare and Institutions Code, including section 827, "vest the juvenile court with exclusive authority to determine the extent to which juvenile records may be released to third parties" (id. at p. 778, 94 Cal.Rptr. 813, 484 P.2d 981, italics added); that police records of initial contact with juveniles who had been detained and released without formal proceedings were "equivalents to court records and remain within the control of the juvenile court" (id. at p. 781, 94 Cal.Rptr. 813, 484 P.2d 981); and that the juvenile court had jurisdiction either to release or to deny disclosure of such records, even where no dependency or wardship petition had ever been filed with respect to the subject minors. (Id. at pp. 772, 778-782, 94 Cal.Rptr. 813, 484 P.2d 981.)[15]
Relying on T.N.G., the appellate court in Wescott v. County of Yuba (1980) 104 Cal. App.3d 103, 163 Cal.Rptr. 385, similarly upheld the juvenile court's authority and jurisdiction under section 827 to control the release or disclosure of all records of juvenile arrests or detentions, even where no juvenile petition had ever been filed and no juvenile court proceedings were pending. The court specifically rejected a claim that section 827 only related to documents that had been filed in the juvenile court itself. (Id. at pp. 106-109, 163 Cal.Rptr. 385.) The court held that "the strictures of section 827 require a [juvenile] court order before any reports relating to the juveniles can be released to third parties." (Id. at p. 109, 163 Cal.Rptr. 385.)
The Agency attempts to distinguish both T.N.G. and Wescott and the grounds those cases were not dependency cases under section 332, and instead were delinquency matters involving the confidentiality of police records of juveniles who had been detained without the filing of any delinquency *29 petitions against them pursuant to section 601, et seq. This factual distinction is immaterial to the issue in this case. The Agency's interpretation would render the scope of the juvenile court's jurisdictional authority over juvenile records contingent on whether the records at issue were generated by a police department or by a child welfare or social services agency. However, there is no authority for differentiating between the exclusive jurisdiction of the juvenile court over juvenile records generated in a delinquency context from its jurisdiction over the equally confidential juvenile records which arise in a child welfare or dependency context. In both instances, the juvenile court is in the best position to weigh competing concerns with respect to disclosure.
Contrary to the Agency's position, the courts have consistently upheld the juvenile court's jurisdiction to control access to juvenile dependency records regardless of whether they were generated by a child protective agency or in the context of a delinquency matter. Thus, as the court of appeal in Lorenza P. v. Superior Court (1988) 197 Cal.App.3d 607, 242 Cal.Rptr. 877 reiterated: "Included within the sphere of confidentiality are agency records relating to juvenile contacts as well as police reports. Even if juvenile court proceedings are not instituted and the matter is handled informally the juvenile's records relating to the incident remain confidential. [Citations.] [¶] The cloak of confidentiality is, however, not absolute. It is the juvenile court, the court which has exclusive jurisdiction in these matters, which determines the extent to which any files will be released. [Citation.] These records cannot be obtained by a subpoena.... [Citation.] Rather the proper procedure is to petition the juvenile court to review the records in camera to determine which, if any, may be disclosed. [Citation.]" (Id. at pp. 610-611, 242 Cal. Rptr. 877, italics added; see also In re Maria V. (1985) 167 Cal.App.3d 1099, 1103, 213 Cal.Rptr. 733 [in the juvenile dependency context, section 827 "gives the [juvenile] court the exclusive authority to determine whether disclosure of juvenile records to persons not specifically named in the statute is in the best interest of the minor. [Citation.] Exercise of that authority will not be disturbed absent clear abuse"].)
As our Supreme Court has affirmed, "[n]otwithstanding the absence of specific authorization to make particular determinations, a juvenile court is nevertheless vested with the authority to make such determinations which are incidentally necessary to the performance of those functions demanded of it by the Legislature pursuant to the Juvenile Court Law." (In re Lisa R. (1975) 13 Cal.3d 636, 643, 119 Cal.Rptr. 475, 532 P.2d 123.) Among these determinations are those specifically set out in section 827, subdivision (a)(2), in connection with the release to the public of juvenile case files pertaining to deceased minors who were "within the jurisdiction of the juvenile court pursuant to Section 300." Because nothing in the statute itself suggests that the juvenile court lacks authority or jurisdiction to act to release juvenile case files pertaining to a deceased child unless a dependency petition has already been filed pursuant to section 332, we conclude that it does have that authority and jurisdiction; and that the juvenile court did not err in doing so in this case, pursuant to its implied jurisdictional determination under section 300.

STATUTORY DEFINITION OF "JUVENILE CASE FILES"
The Agency insists its position  that the juvenile court was without jurisdiction to act on the section 827 petition to disclose *30 the juvenile records of a deceased minor in the absence of a preceding juvenile dependency or delinquency petition with regard to that minor  is supported by the statutory definition of a "juvenile case file" found in subdivision (e) of section 827 and the implementing rule at California Rules of Court, rule 1423. Once again, we disagree with the Agency's interpretation.
As seen, section 827, subdivision (a)(2) expressly provides that "juvenile case files" pertaining to "a deceased child who was within the jurisdiction of the juvenile court pursuant to Section 300" "shall be released to the public" by the juvenile court upon the filing of a petition, with notice and opportunity to object having been given to "interested parties." The term "juvenile case files" is defined by section 827, subdivision (e), which provides as follows: "For purposes of this section, a `juvenile case file' means a petition filed in any juvenile court proceeding, reports of the probation officer, and all other documents filed in that case or made available to the probation officer in making his or her report, or to the judge, referee, or other hearing officer, and thereafter retained by the probation officer, judge, referee, or other hearing officer." (Italics added.)
On its face, this statutory definition of "juvenile case files" includes "reports of the probation officer" and "all other documents" which have been "made available to the probation officer." Such "documents" necessarily include reports or other written statements by social workers, probation officers, child protective investigators and public agency personnel involved in investigating a suspected case of neglect or abuse concerning a child coming within the scope of section 300. These sorts of written reports and documentation are not always required to be filed directly with the juvenile court, and are frequently under the control of the applicable county agencies rather than in the possession of the juvenile court. (See §§ 301, 331; T.N.G. v. Superior Court, supra, 4 Cal.3d at pp. 780-781, 94 Cal.Rptr. 813, 484 P.2d 981; Keisha, supra, 38 Cal.App.4th at pp. 237-238, 44 Cal.Rptr.2d 822; Lorenza P. v. Superior Court, supra, 197 Cal.App.3d at pp. 610-611, 242 Cal.Rptr. 877, 87 Ops.Cal. Atty.Gen. 72, 75-76 (2004).) Significantly, there is no language in section 827, subdivision (e) making the previous filing of a dependency petition under section 332 a necessary precondition to a juvenile court's having jurisdiction over these "juvenile case files." By the same token, neither is there any indication that documents generated or maintained by social workers, probation officers and public agency personnel with respect to suspected cases of child neglect or abuse must be filed with the juvenile court before they may be included in the definition of "juvenile case files" subject to release under section 827, subdivision (a)(2). We conclude that the term "juvenile case file," as defined and used in section 827, "covers a wide range of records, including agency files where no juvenile court proceedings have been instituted and the matter is handled informally. [Citations.]" (87 Ops.Cal.Atty.Gen. supra, at pp. 75-76.)

RULE 1423
The Agency also cites rule 1423 of the California Rules of Court in support of its argument that the juvenile court's authority over juvenile case files does not extend to records maintained by public agencies unless a section 332 petition has been filed.[16] The argument is meritless. In the *31 first place, rule 1423  like section 827 itself  contains no mention of any requirement that a section 332 dependency petition be filed before a juvenile court may order the release of juvenile case files. Moreover, the kinds of documents specifically listed in rule 1423 and identified by it as subject to release under section 827 as "juvenile case files" include several categories of documentary records which do not always have to be filed with the juvenile court, and frequently are not so filed.
Thus, rule 1423(a) includes in the list of documents qualifying as "juvenile case files" reports by probation officers and "social workers of child welfare services programs," as well as documents "made available" to probation officers and social workers, and records or reports "relating to matters prepared or released by" a probation department or child welfare services program. (Cal. Rules of Court, rule 1423(a)(2), (3), (5).) All of these documents may have been generated by investigations preceding the filing of any dependency petition, and none is contingent upon a petition ever having been filed. Indeed, two of the six categories of records specifically enumerated by rule 1423 as within the definition of "juvenile case files" are "[a]ll documents filed in a juvenile court case" and "[d]ocuments relating to a child concerning whom a petition has been filed in juvenile court." (Cal. Rules of Court, rule 1423(a)(1), (4).) The express inclusion of these two categories in rule 1423(a) indicates that other documents also listed as within the definition of "juvenile case files" may include records relating to minors as to whom no petition has been filed in juvenile court, as well as documents which have never been filed in any juvenile court case. (See 87 Ops.Cal.Atty. Gen. supra, at pp. 75-76.)
Moreover, even if the language of rule 1423 could somehow be interpreted as *32 purporting to restrict the scope of the juvenile court's authority to permit disclosure of juvenile records pursuant to section 827  a construction which we reject  such a reading of the rule would have no validity or effect on the jurisdiction or authority of the juvenile court. "The Judicial Council is authorized to `adopt rules for court administration, practice, and procedure, not inconsistent with statute, ...' (Cal. Const., art. VI, § 6.) To the extent California Rules of Court, rule [1423] limits the discretion of the juvenile court to disclose juvenile court records ..., the rule restricts the juvenile court's discretion beyond that provided in the statute. The Judicial Council has no authority to so reduce the court's discretion. A rule that purports to do so is inconsistent with statute and, to that extent, invalid. [Citations.]" (Keisha, supra, 38 Cal. App.4th at p. 235, 44 Cal.Rptr.2d 822.)[17]

SECTION 10850
The Agency argues that section 10850 bars the release of the records at issue here, on the grounds that until a dependency petition has been filed pursuant to section 332, the Agency has the obligation to maintain the confidentiality of any juvenile records under its control with respect to the provision of child welfare services. Section 10850 establishes the confidentiality of certain social service agency records and bars their release except upon specified conditions.[18]
This assertion has been specifically rejected by the courts. Thus, in Keisha, supra, 38 Cal.App.4th 220, 44 Cal.Rptr.2d 822, the Court of Appeal held that the protection afforded by section 10850 to the identity of recipients of child welfare services does not limit the jurisdiction of the juvenile court to permit the release of juvenile records under specified conditions. In so doing, the court specifically noted that "[p]rotecting the identity of aid recipients is not inconsistent with providing some press access to juvenile court records; the records can be redacted to remove the identities of the aid recipients. We do not find in section 10850 a legislative intent for its confidentiality provisions to be used as a shield to hide from public scrutiny the functioning of publicly *33 funded agencies. Moreover, as to the confidentiality of the minors' status as aid recipients, this purpose can no longer be served once a party, such as [a newspaper], has learned the fact from another source. At that point, only the protective purpose of section 827 remains viable." (Keisha, supra, 38 Cal.App.4th at p. 238, 44 Cal.Rptr.2d 822.) We agree with the analysis and holding of the court in Keisha, and find it instructive to our analysis in this case. Indeed, we can see far less justification for maintaining the confidentiality of a deceased minor's juvenile records once the public has gained knowledge of his or her identity from other sources.

LEGISLATIVE HISTORY
Finally, the Agency argues that the legislative history of section 827 supports its assertion that the juvenile court may only order disclosure of the records of a deceased minor within its jurisdiction under section 300 when a juvenile dependency or delinquency petition has previously been filed regarding the subject child. In connection with this argument, the Agency has filed a request for judicial notice of documentation from the legislative history. By April 1, 2004, order we deferred consideration of this request to our decision of this appeal on the merits.
We now grant the Agency's request for judicial notice of the subject legislative history materials pursuant to Evidence Code sections 452 and 459. It is of no assistance, however, to the Agency's argument. In the first place, the legislative history strongly supports the conclusion that in enacting section 827, subdivision (a)(2), the Legislature intended to significantly increase the public's right of access to otherwise confidential juvenile records concerning deceased children, by creating a presumption in favor of the release of such records based on the premise that the child's death had eliminated his or her legal interest in the confidentiality of such records. (See Pack v. Kings County Human Services Agency, supra, 89 Cal.App.4th at p. 829, 107 Cal. Rptr.2d 594.) The intent of the Legislature was clearly not to impose any further limitations on the authority of the juvenile court to order disclosure of this information; to the contrary, the intent was to require the juvenile court to release the records unless the privacy rights of third parties were involved.
More significantly, the legislative history shows that the Legislature was interested in opening up to public view the workings of the entire juvenile court and child protective system for the purpose of exposing deficiencies therein, and thereby enabling their correction. The legislation was specifically introduced in the wake of the deaths of several dependent children who died while in foster care or otherwise under the jurisdiction of the juvenile court, allegedly as a result of negligence by a county child protective agency. The history contains numerous references to an intent on the part of the Legislature to remove the presumption of confidentiality with regard to juvenile records of deceased children, precisely in order to make it easier for the press and the public to investigate the death of suspected victims of abuse and neglect, and not coincidentally "to open the workings of the dependency court and the foster care system to public scrutiny in order to spur improvements in the child welfare system." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 199 (1999-2000 Reg. Sess.) as amended May 6, 1999.)[19]
*34 This legislative purpose of opening up the workings of the child welfare system would not be advanced by limiting disclosure of juvenile records to only those generated and maintained by the juvenile court after a minor had already been declared a dependent. Indeed, imposing such a restriction on the power of the juvenile court to release records would effectively make it impossible to investigate the kinds of errors or negligence that might lead to the death of a minor before the responsible agency had filed a dependency petition with the juvenile court. Such deficiencies could only be exposed if the juvenile court maintains authority to order the release of such documentation regardless of whether or not a juvenile dependency petition had previously been filed.

DISPOSITION
In sum, we hold that under section 827, subdivision (a)(2), the juvenile court has jurisdiction and exclusive authority to order the disclosure of juvenile records pertaining to a deceased child who came within the jurisdiction of the juvenile court as set out in section 300, regardless of whether a juvenile dependency petition pursuant to section 332 had been filed prior to or concurrently with the filing of the request for disclosure under section 827. The juvenile court did not abuse its discretion in granting the requests for disclosure made in this case, subject to its review of the relevant records in camera and the redaction of any information that might affect the rights and interests of third parties mentioned in the documents.
The orders of the juvenile court are affirmed. The stay previously issued by this court shall be dissolved upon issuance of the remittitur. Each party shall pay its own costs on this appeal.
We concur: CORRIGAN and PARRILLI, JJ.
NOTES
[1] Unless otherwise indicated, all further unspecified statutory references are to the Welfare and Institutions Code.
[2] The Chronicle alleged on information and belief that Savannah R. had died in February 1995, and that Elijah S. had died in December 2000. Neither of the Chronicle's petitions, nor those of the Times, contained any more allegations about the cause of the minors' deaths, or the alleged connection between their deaths and the Agency. Respondents have requested that this court take judicial notice of certain newspaper articles allegedly concerning the minors in this case. By order dated May 28, 2004, we deferred consideration of the request to the decision of this appeal on its merits. There is nothing in the record showing that these documents were presented to the juvenile court below. In view of that fact, the material is of questionable relevance or materiality, and we now deny the request for judicial notice on that basis.
[3] At the hearing ultimately held on September 25, 2003, the juvenile court indicated that its initial orders granting the respective petitions regarding Savannah R. were erroneous, and superseded by the court's subsequent order setting all the petitions for hearing.
[4] It appears from the transcript of the hearing that the position of the Times at the hearing on September 25, 2003, was presented by the Times news reporter who had filed the petitions on behalf of that newspaper. The Agency has not raised on this appeal any issue regarding the manner of the Times' representation at the hearing in juvenile court, or the way in which the Times' position was argued below.
[5] Among others, these include court personnel; district attorneys and city attorneys authorized to prosecute criminal or juvenile cases; the minor who is the subject of the proceeding and his or her parents or guardian; attorneys, judges, referees, hearing officers and law enforcement officers actively participating in criminal or juvenile proceedings involving the minor; members of child protective agencies; the superintendent of the school district where the minor is enrolled; and representatives of the State Department of Social Services. (§ 827, subd. (a)(1)(A)-(H).)
[6] Section 827, subdivision (a)(3) provides in pertinent part as follows: "Access to juvenile case files pertaining to matters within the jurisdiction of the juvenile court pursuant to Section 300 shall be limited as follows: [¶] (A) ... Unless a person is listed in subparagraphs (A) to (L), inclusive, of paragraph (1) and is entitled to access under the other state law or federal law or regulation without a court order, all those seeking access, pursuant to other authorization, to portions of, or information relating to the contents of, juvenile case files protected under another state law or federal law or regulation, shall petition the juvenile court. The juvenile court may only release the portion of, or information relating to the contents of, juvenile case files protected by another state law or federal law or regulation if disclosure is not detrimental to the safety, protection, or physical or emotional well-being of a child who is directly or indirectly connected to the juvenile case that is the subject of the petition. This paragraph shall not be construed to limit the ability of the juvenile court to carry out its duties in conducting juvenile court proceedings."
[7] Section 827 provides in pertinent part as follows: "(a) [¶] ... [¶] (2) Notwithstanding any other law and subject to subparagraph (A) of paragraph (3), juvenile case files, except those relating to matters within the jurisdiction of the court pursuant to Section 601 or 602, which pertain to a deceased child who was within the jurisdiction of the juvenile court pursuant to Section 300, shall be released to the public pursuant to an order by the juvenile court after a petition has been filed and interested parties have been afforded an opportunity to file an objection. Any information relating to another child or which could identify another child, except for information about the deceased, shall be redacted from the juvenile case file prior to release, unless a specific order is made by the juvenile court to the contrary. Except as provided in this paragraph, the presiding judge of the juvenile court may issue an order prohibiting or limiting access to the juvenile case file, or any portion thereof, of a deceased child only upon a showing that release of the juvenile case file or any portion thereof is detrimental to the safety, protection, or physical, or emotional well-being of another child who is directly or indirectly connected to the juvenile case that is the subject of the petition. [¶] ... [¶]

"(b)(1) While the Legislature reaffirms its belief that juvenile court records, in general, should be confidential, it is the intent of the Legislature in enacting this subdivision to provide for a limited exception to juvenile court record confidentiality to promote more effective communication among juvenile courts, family courts, law enforcement agencies, and schools to ensure the rehabilitation of juvenile criminal offenders as well as to lessen the potential for drug use, violence, other forms of delinquency, and child abuse."
[8] "In contrast to the veritable presumption in favor of confidentiality that attends the juvenile records of a living child, subdivision (a)(2) reflects a veritable presumption in favor of release when the child is deceased. (See Assem. Republican Caucus, analysis of Sen. Bill No. 199 (1999-2000 Reg. Sess.) as amended May 6, 1999, June 26, 1999, p. 1; Assem. Com. on Judiciary, Rep. on Sen. Bill No. 199 [(1999-2000 Reg. Sess.)] as amended May 6, 1999, p. 3; Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 199 (1999-2000 Reg. Sess.) as amended July 1, 1999, p. 1.) Thus, unlike records pertaining to a living dependent, which must be maintained as confidential unless some sufficient reason for disclosure is shown to exist, records pertaining to a deceased dependent must be disclosed unless the statutory reasons for confidentiality are shown to exist." (Pack v. Kings County Human Services Agency, supra, 89 Cal.App.4th at p. 829, 107 Cal.Rptr.2d 594.)
[9] Section 300 provides in pertinent part: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] (a) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian.... [¶] (b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse .... [¶] ... [¶] (e) The child is under the age of five and has suffered severe physical abuse by a parent, or by any person known by the parent, if the parent knew or reasonably should have known that the person was physically abusing the child." (Italics added.)
[10] Neither party has addressed the issue of burden of proof on this threshold jurisdictional issue, either in the juvenile court below or in this court on appeal. We therefore do not attempt to decide what may constitute a sufficient factual demonstration to make a prima facie showing that a deceased minor "was within the jurisdiction of the juvenile court pursuant to Section 300."
[11] In its opening brief on appeal, the Agency never actually identified the kind of "petition" it argues must previously have been filed before a juvenile court has jurisdiction to act on a petition to disclose records under section 827. After respondents pointed this out in their brief, the Agency's reply brief identified the necessary petition as a dependency petition under section 332.
[12] Section 301, subdivision (a) provides in pertinent part as follows: "In any case in which a social worker after investigation of an application for petition or other investigation he or she is authorized to make, determines that a child is within the jurisdiction of the juvenile court or will probably soon be within that jurisdiction, the social worker may, in lieu of filing a petition or subsequent to dismissal of a petition already filed, and with consent of the child's parent or guardian, undertake a program of supervision of the child. If a program of supervision is undertaken, the social worker shall attempt to ameliorate the situation which brings the child within, or creates the probability that the child will be within, the jurisdiction of Section 300 by providing or arranging to contract for all appropriate child welfare services.... If the family has refused to cooperate with the services being provided, the social worker may file a petition with the juvenile court pursuant to Section 332. Nothing in this section shall be construed to prevent the social worker from filing a petition pursuant to Section 332 when otherwise authorized by law." (Italics added.)
[13] On the other hand, under section 313, whenever a minor is taken into custody by a peace officer or probation officer in this way, the minor must be released within 48 hours, excluding nonjudicial days, "unless within said period of time a petition to declare him [or her] a dependent child has been filed."
[14] "Under the Juvenile Court Law, the juvenile court is authorized to make orders pertaining to abused or neglected children who come within the court's jurisdiction. (§§ 361, 362.)[¶] The county's social services agency plays a `hybrid' role in dependency proceedings, exercising both executive and judicial functions. [Citation.] `The juvenile law system envisions a cooperative effort between the [social services agency] and the juvenile court.' [Citation.] The social services agency has the initial responsibility to investigate allegations of abuse or neglect and has authority to take temporary custody of an abused or neglected child. (§ 306.) But the agency must account to the court on the reasons for removing the child from home and on the services available to facilitate the child's return. (§ 319.)" (In re Ashley M., supra, 114 Cal. App.4th at p. 7, 7 Cal.Rptr.3d 237, italics added.)
[15] "Welfare and Institutions Code section 827 reposes in the juvenile court control of juvenile records and requires the permission of the court before any information about juveniles is disclosed to third parties by any law enforcement official. [¶] The police department of initial contact may clearly retain the information that it obtains from the youth's detention, but it must receive the permission of the juvenile court pursuant to section 827 in order to release that information to any third party, including state agencies. Police records in this regard become equivalents to court records and remain within the control of the juvenile court. [Citation.] [¶] Since the entire Juvenile Court Law places the responsibility of providing care and protective guidance for youths upon the juvenile court, section 827 provides the means for assuring to the juvenile court the authority to fulfill that responsibility without interference by third parties. In determining what information should be released, the juvenile court is in a position to determine whether disclosure would be in the best interests of the youth." (T.N.G. v. Superior Court, supra, 4 Cal.3d at pp. 780-781, 94 Cal.Rptr. 813, 484 P.2d 981.)
[16] California Rules of Court, rule 1423 provides in pertinent part: "(a) For the purposes of this rule, `juvenile case files' include: [¶] (1) All documents filed in a juvenile court case; [¶] (2) Reports to the court by probation officers, social workers of child welfare services programs, and court-appointed special advocates; [¶] (3) Documents made available to probation officers, social workers of child welfare services programs, and court-appointed special advocates in preparation of reports to the court; [¶] (4) Documents relating to a child concerning whom a petition has been filed in juvenile court, which are maintained in the office files of probation officers, social workers of child welfare services programs, and court-appointed special advocates; [¶] (5) Transcripts, records, or reports relating to matters prepared or released by the court, probation department, or child welfare services program; and [¶] (6) Documents, video or audio tapes, photographs, and exhibits admitted into evidence at juvenile court hearings.

"(b) Only those persons specified in sections 827 and 828 may inspect juvenile court records without authorization from the court.... Juvenile court records may not be obtained or inspected by civil or criminal subpoena. Authorization for any other person to inspect, obtain, or copy juvenile court records must be ordered by the juvenile court presiding judge or a judicial officer designated by the juvenile court presiding judge.
"In determining whether to authorize inspection or release of juvenile court records, in whole or in part, the court must balance the interests of the child and other parties to the juvenile court proceedings, the interests of the petitioner, and the interests of the public. The court must permit disclosure of, discovery of, or access to juvenile court records or proceedings only insofar as is necessary, and only if there is a reasonable likelihood that the records in question will disclose information or evidence of substantial relevance to the pending litigation, investigation, or prosecution. The court may issue protective orders to accompany authorized disclosure, discovery, or access.
"(c) With the exception of those persons permitted to inspect juvenile court records without court authorization under sections 827 and 828, every person or agency seeking to inspect or obtain juvenile court records must petition the court for authorization using Judicial Council form JV-570, Petition for Disclosure of Juvenile Court Records. The specific records sought shall be identified based on knowledge, information, and belief that such records exist and are relevant to the purpose for which they are being sought."
[17] By the same token, the Agency's reliance on the advisory committee comment on rule 1423 is entirely misplaced. To the extent the advisory committee's comment purports to read into section 827 a requirement that a dependency or delinquency petition must have been filed before juvenile records may be ordered disclosed, it is without any force or effect. The Judicial Council has no authority to place limitations on the juvenile court's exclusive authority over juvenile records, or its broad discretion under the Welfare and Institutions Code to regulate the disclosure of confidential records in the interests of juveniles within its jurisdiction. (Keisha, supra, 38 Cal.App.4th at p. 235, 44 Cal.Rptr.2d 822.)
[18] In pertinent part, section 10850 provides: "Except as otherwise provided in this section, all applications and records concerning any individual made or kept by any public officer or agency in connection with the administration of any provision of this code relating to any form of public social services for which grants-in-aid are received by this state from the United States government shall be confidential, and shall not be open to examination for any purpose not directly connected with the administration of that program, or any investigation, prosecution, or criminal or civil proceeding conducted in connection with the administration of any such program. The disclosure of any information which identifies by name or address any applicant for or recipient of these grants-in-aid to any committee or legislative body is prohibited, except as provided in subdivision (b)." (§ 10850, subd. (a).) Subdivision (b) in turn provides that the identities of aid recipients and any confidential information pertaining to applicants or recipients of aid can be disclosed only to certain entities for certain purposes; and makes a willful violation of its provision a misdemeanor. (§ 10850, subd. (b).)
[19] The Assembly Committee on the Judiciary's analysis of Senate Bill No. 199 (later enacted at Stats. 1999, ch. 984, § 1) includes the following with respect to the Legislature's intent in enacting section 827, subdivision (a)(2): "The author introduced this bill to make it easier to investigate possible wrongdoing when a child dies while under the jurisdiction of the dependency court. Current law presumes that juvenile case files are confidential. This presumption, however, may hinder attempts by the public or the parents of the child to determine if the child died as a result of abuse at the hands of those persons responsible for the care of the child. This bill seeks to open the workings of the dependency court and the foster care system to public scrutiny in order to spur improvements in the child welfare system."