TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 20-1001 |
| of | : | September 8, 2022 |
| ROB BONTA Attorney General | : | |
| MANUEL M. MEDEIROS Deputy Attorney General | : | |

THE HONORABLE DAN DOW, DISTRICT ATTORNEY OF SAN LUIS OBISPO COUNTY, has requested an opinion on questions concerning dissemination of state summary criminal history information:

**QUESTIONS PRESENTED AND CONCLUSIONS**

1. During the criminal discovery process, may a district attorney voluntarily provide a public defender, or other defense counsel of record, with a copy of the adult or juvenile defendant's state summary criminal history information ("RAP sheet")?

Yes. During the criminal discovery process, a district attorney may voluntarily provide a public defender, or other defense counsel of record, with a copy of the adult or juvenile defendant's own RAP sheet.

2. If voluntary compliance with defense counsel's request for the defendant's RAP sheet is permissible, must any information be redacted from the RAP sheet before furnishing it to defense counsel?

1

Yes.  Juvenile court information must be redacted from an adult defendant's RAP sheet.  Counsel for a juvenile defendant, however, may receive an unredacted copy of the juvenile defendant's RAP sheet.

## BACKGROUND

The Department of Justice, under the direction of the Attorney General, maintains a compilation of criminal history information that is officially known as "state summary criminal history information" and is commonly known as an individual's "RAP sheet."[1] This is a "master record of information" pertaining to the identification and criminal history of a person, "such as name, date of birth, physical description, fingerprints, photographs, dates of arrests, arresting agencies and booking numbers, charges, dispositions, sentencing information, and similar data about the person."[2]

An individual's RAP sheet is readily available to law enforcement and criminal justice agencies, including a district attorney, via a computer query to the Department of Justice over the California Law Enforcement Telecommunications System (CLETS).[3]

---

[1] Pen. Code, § 11105, subd. (a)(2)(A).  "RAP" stands for "record of arrests and prosecutions."  (See, e.g., Cal. Code Regs., tit. 15, § 2449.4 [Board of Parole Hearings].) The term is also commonly used in connection with local summary criminal history information (see Pen. Code, pt. 4, tit. 3, ch. 2, art. 6, § 13300 et seq.), but we use the term in this opinion with specific reference to state summary criminal history information.

[2] Pen. Code, § 11105, subd. (a)(2)(A).

[3] Gov. Code, §§ 15150-15167.  CLETS operates under the direction of the Attorney General (Gov. Code, § 15153), who is assisted by an appointed advisory committee (Gov. Code, §§ 15154-15164).  The Attorney General, on advice from the committee, has established "Policies, Practices, and Procedures" (commonly referred to as PPP) for the management of CLETS.  (Gov. Code, § 15160, subd. (a); see https://tinyurl.com/34znv88e [as of Sept. 6, 2022].)  CLETS terminals are maintained by law enforcement or criminal justice agencies under a contract arrangement in accordance with the PPP.

20-1001

District attorneys rely on a defendant's[4] RAP sheet for a number of reasons: for example, to make filing decisions, or in the course of plea bargaining, or in charging prior "strikes,"[5] or as evidence of the defendant's prior offenses.[6] For those reasons, and more,[7] defense counsel typically want to review their clients' RAP sheets as early in the process as possible. However, unlike the district attorney, defense counsel do not have direct access to CLETS, and often seek to obtain the RAP sheet as part of discovery.[8]

Under California's discovery statutes, the prosecutor is required to furnish specified information to defense counsel: "(a) The names and addresses of persons the prosecutor intends to call as witnesses at trial[;] (b) Statements of all defendants[;] (c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged[;] (d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial[;] (e) Any exculpatory evidence[;] and (f) Relevant written or recorded statements of witnesses or reports of the

---

[4] In this opinion, we use the term "defendant" to include both adult and juvenile defendants. Within a juvenile court delinquency proceeding, the youthful offender is usually referred to as either "the minor" or "the juvenile." An adverse decision in the proceeding makes the juvenile a "ward of the court." However, the appellate courts commonly refer to the juvenile in a delinquency proceeding as a "defendant," and we will do so here as well. When a juvenile is tried as an adult in criminal court (see Welf. & Inst. Code, §§ 707, 707.01, 707.1), he or she is referred to in the trial court as the "defendant."

[5] Pen. Code, § 667.

[6] See, e.g., Evid. Code, §§ 1108 (evidence of prior sexual offenses), 1109 (prior acts of domestic violence).

[7] For example, defense counsel have an obligation to advise their clients of any possible adverse immigration consequences of a plea, "and when consistent with the goals of and with the informed consent of the defendant, and consistent with professional standards, defend against those consequences." (Pen. Code, § 1016.2, subd. (a); see generally Pen. Code §§ 1016.2-1016.5; see also *Padilla v. Kentucky* (2010) 559 U.S. 356 [deficient performance by counsel by failing to advise defendant that his guilty plea made him subject to automatic deportation].)

[8] See Gov. Code, § 15152 (CLETS is maintained "for the use of law enforcement agencies"). Hereafter, we will use the term "defense counsel" to refer to both a public defender and private defense counsel in a criminal or juvenile delinquency proceeding.

20-1001

statements of witnesses whom the prosecutor intends to call at the trial . . . ."[9] However, the discovery statutes also provide that, unless production of information is mandated by statute, by the United States Constitution, or by the court, the district attorney need not produce the information for defense counsel.[10] Neither the Constitution nor any statute requires the prosecutor to give a copy of defendant's RAP sheet to defense counsel. The question at issue here, however, is whether the district attorney may do so voluntarily.

If the district attorney does not voluntarily provide defense counsel with a copy of the defendant's RAP sheet, defense counsel must apply to the Attorney General to obtain a copy.[11] In turn, the Attorney General is required to furnish RAP sheet information to attorneys who are representing an individual "in a criminal case or juvenile delinquency proceeding," if the information is "needed in the course of their duties."[12] Upon certification of counsel's qualification for access to the information,[13] the Department of Justice will provide counsel with a copy of a defendant's RAP sheet.[14]

Nevertheless, hoping to avoid the delay inherent in the Department of Justice application process, we are told that defense counsel commonly request production of a copy of defendant's RAP sheet from the district attorney. We are informed that some district attorneys routinely accommodate the request, others decline to do so, and still

---

[9] Pen. Code, § 1054.1. Although the statutory discovery provisions expressly apply only to criminal proceedings, the juvenile court has discretion to apply them in juvenile delinquency cases as well. (*J.E. v. Superior Court* (2014) 223 Cal.App.4th 1329, 1334.)

[10] Pen. Code, §§ 1054, subd. (e), 1054.5, subd. (a); see *People v. Tillis* (1998) 18 Cal.4th 284, 294.

[11] *People v. Webber* (1991) 228 Cal.App.3d 1146, 1167 (district attorney not required to procure defendant's RAP sheet for defense counsel, because it is available from the Attorney General).

[12] Pen. Code, § 11105, subd. (b)(9). The Attorney General is also mandated to provide RAP sheet information to a district attorney (Pen. Code, § 11105, subd. (b)(3)), but as we noted above, the usual way a district attorney obtains RAP sheet information is via CLETS.

[13] See Dept. of Justice, Certification of Attorney of Record, BCIA Form 8700, https://tinyurl.com/2p88msv8 (as of Sept. 6, 2022). Criminal offender information is maintained by the Bureau of Criminal Information and Analysis (BCIA), within the California Justice Information Services Division of the Department of Justice.

[14] For reasons that are explained below under the heading "Redaction," the Department of Justice will redact from an adult defendant's RAP sheet any information concerning the defendant's juvenile record.

others are uncertain whether they may do so lawfully.  Thus, we are asked (1) whether a district attorney may voluntarily comply with defense counsel's discovery request for the defendant's own RAP sheet, and (2) if so, what, if any, information must be redacted from the RAP sheet before it is handed over.  As discussed in greater detail below, we conclude that a district attorney may voluntarily provide a defendant's RAP sheet upon defense counsel's request.  As for redaction, we conclude that juvenile court information must be redacted from an adult defendant's RAP sheet, but not from a juvenile defendant's.

## ANALYSIS

### 1.  Voluntarily Furnishing a Criminal Defendant's RAP Sheet

California law forbids an authorized recipient of state summary criminal history information, such as a district attorney, from furnishing that information to an *unauthorized* recipient.[15]  But Penal Code section 11105(b)(9) makes defense counsel authorized recipients of such information for purposes of preparing for trial.[16]  And as a general matter, nothing forbids a prosecuting attorney from voluntarily providing more discovery to defense counsel than strictly required.[17]  Nevertheless, some district attorneys suggest that either section 11105(b)(9) itself, or another statute, section 11125, precludes a district attorney from voluntarily providing RAP sheet information to defense counsel.  We discuss those claims below.[18]

---

[15] Pen. Code, § 11142.

[16] Pen. Code, § 11105, subd. (b)(9).

[17] Cf., e.g., Green, *Prosecutors' Professional Independence,* 22 Sum.Crim.Just. 4, p. 9 (Summer, 2007) (questioning whether junior prosecutors, rather than supervisors, should have authority to be more generous in discovery than required by disciplinary rules and law).  Indeed, state policy prefers informal discovery over an insistence that defense counsel be put to the proof of entitlement to the discovery information.  (See Pen. Code, § 1054, subd. (b) [one of the purposes of the discovery statutes is: "To save court time by requiring that discovery be conducted informally between the parties"].)

[18] Our analysis applies equally to requests by counsel for an adult or juvenile defendant, and, in the case of a juvenile, our analysis applies whether the juvenile is a defendant in a criminal or juvenile delinquency proceeding.  The defendant's age of minority affects only the issue of redaction of information, which is discussed below.

20-1001

*Section 11105(b)(9)*

Some district attorneys suggest that the Legislature intended that section 11105(b)(9) make the Attorney General the *exclusive* source of RAP sheet information for defense counsel. The argument is that the statute, by implication, bars a district attorney from sharing with defense counsel RAP sheet information that was received via CLETS. We find this argument unpersuasive.

We begin our analysis by considering the overall legislative scheme concerning dissemination of state summary criminal history information. As a general proposition, California law does not forbid secondary disclosure of this information among authorized recipients, i.e., from one authorized recipient to another *authorized* recipient, only from one authorized recipient to an *unauthorized* recipient.[19] Accordingly, Penal Code section 11142 states: "Any person authorized by law to receive a record or information obtained from a record who knowingly furnishes the record or information to a person who is not authorized by law to receive the record or information is guilty of a misdemeanor." The term "record" in this context means "the state summary criminal history information as defined in subdivision (a) of Section 11105, or a copy thereof, maintained under a person's name by the Department of Justice."[20] And the phrase "person authorized by law to receive a record," is expressly defined to mean "any person or public agency authorized by a court, statute, or decisional law to receive a record."[21]

Of course, a district attorney is an authorized recipient of criminal history information.[22] And the same is true of defense counsel in the context of a criminal or

---

[19] Pen. Code, § 11142. State law also forbids knowing dissemination of criminal history information between or among *unauthorized* recipients, unless the recipient is an exempt member of the media. (See Pen. Code, § 11143 ["Any person, except those specifically referred to in Section 1070 of the Evidence Code, who, knowing he is not authorized by law to receive a record or information obtained from a record, knowingly buys, receives, or possesses the record or information is guilty of a misdemeanor"].)

[20] Pen. Code, § 11140, subd. (a). As mentioned above, "state summary criminal history information," commonly referred to as a person's RAP sheet, means "the master record of information compiled by the Attorney General pertaining to the identification and criminal history of a person, such as name, date of birth, physical description, fingerprints, photographs, dates of arrests, arresting agencies and booking numbers, charges, dispositions, sentencing information, and similar data about the person." (Pen. Code, § 11105, subd. (a)(2)(A).)

[21] Pen. Code, § 11140, subd (b).

[22] Pen. Code, § 11105, subd. (b)(3).

20-1001

juvenile delinquency proceedings.[23]  Section 11142 is therefore no bar to secondary dissemination between these two authorized recipients.  Moreover, when the Legislature sees a need to forbid secondary dissemination by an authorized recipient, the Legislature knows how to do so.[24]  It has not done so here.

But beyond this consideration of the Legislature's overall treatment of RAP sheet dissemination, section 11105(b)(9)'s directive to the Attorney General does not, by its terms, even suggest a concomitant limitation on the discretion of district attorneys in the conduct of discovery.  In construing a statute, we follow the usual rules of statutory construction and look "first to the words of the statute themselves, giving to the language its usual, ordinary import."[25]  If the language supports more than one reasonable interpretation, we may consider the evils to be remedied, legislative history, the statutory scheme of which the statute is a part, and questions of public policy.[26]  Our ultimate goal, of course, is to effectuate the Legislature's intent.[27]

Here, the language of section 11105(b) is facially prescriptive, its mandate being to ensure that the Attorney General provide summary criminal history information to

---

[23] Pen. Code, § 11105, subds. (b)(9).

[24] See, e.g., Ed. Code, §§ 44237, subd. (n)(1) (private school recipient of information from DOJ "shall not disclose its contents or provide copies of information"; information "shall be destroyed" upon happening of specified event); 45125.01, subd. (f) (same, education agency); Pen. Code, §§ 851.93, subd. (c) (court may not disclose information about expunged arrest records "to any person, in any format," except as specified), 1203.425, subd. (a)(3)(A) (court may not disclose information about expunged convictions "to any person, in any format," except as specified), 11105, subd. (c)(10)(A)(iii) (recipient public utility or cable corporation "shall not disclose its contents other than for the purpose for which it was acquired"), 11105.02 (same, local government recipient), 11105.03, subd. (k) (same, local public housing authority), 11105.3, subd. (k) (same, recipient human resource agency or employer), 13300, subd. (c)(10) (same, recipient public utility), subd. (c)(11) (same, local government recipient).

[25] *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.

[26] *People v. Ramirez* (2009) 45 Cal.4th 980, 987.

[27] 89 Ops.Cal.Atty.Gen. 204, 209-210 (2006); 64 Ops.Cal.Atty.Gen. 677, 683 (1981).

7

specified recipients who should have it.[28]  And section 11105(b)(9), as mentioned, requires the Attorney General to provide RAP sheet information to defense counsel, assuming it is needed in the course of counsel's duties.  In contrast, section 11105(c) gives the Attorney General discretion to provide criminal history information to other specified entities "upon a showing of a compelling need."[29]  But no provision of section 11105 purports to restrict or otherwise direct the activity of a *district attorney* with respect to RAP sheet information in the district attorney's possession and requested by another authorized recipient.

We could conclude our analysis of this argument by relying on the plain language of the statute.  However, we also find support for our conclusion in the statute's legislative history.  There, we discover that section 11105(b)(9) was not enacted to disable district attorneys from voluntarily providing RAP sheets to defense counsel, but rather was intended to provide an alternative route in the event district attorneys decline to release such information voluntarily.[30]

In 1971, the Court of Appeal in *Engstrom v. Superior Court*, noting that defense counsel did not have access to criminal history information comparable to that of the district attorney, ruled that district attorneys must procure prosecution-witness felony conviction information from the Attorney General, and provide it to defense counsel.[31]  The Supreme Court later disapproved of *Engstrom*'s sweeping holding in *Hill v. Superior*

---

[28] Indeed, this has always been the purpose of the statute and its predecessors.  (See Stats. 1905, ch. 399, p. 520, §§ 1, 2 ["It shall be the duty of the director," to "furnish, upon application, all information pertaining to the identification of any person, or persons, a plate, photograph, outline picture, description, measurement or any data of which person there is a record in his office, provided, however, that such information, shall be furnished to the United States officers, or officers of other states or territories or possessions of the United States duly authorized to receive the same and to all sheriffs of the State of California"]; see also Stats. 1917, ch. 723, § 5; Stats. 1953, ch. 1385, p. 2966, § 1.)

[29] Pen. Code, § 11105, subd. (c).

[30] See, e.g., *People v. Webber*, *supra*, 228 Cal.App.3d at p. 1167.

[31] *Engstrom v. Superior Court* (1971) 20 Cal.App.3d 240, 244-245 (*Engstrom*).

8

*Court*, ruling instead that a trial court had the discretion to require the production of this information upon a sufficient showing of good cause.[32]

Following *Hill*, the Legislature undertook a substantial revision of the statutory scheme relating to dissemination of summary criminal record information.[33]  For the first time, section 11105(b)(11) (later renumbered as section 11105(b)(9)) mandated that the Attorney General provide state summary criminal history information to criminal defense counsel "if otherwise authorized access by statutory or decisional law."[34]  That revision represented a legislative response to prosecutor insistence that defense counsel pursue a formal judicial order to obtain prosecution-witness RAP sheet information.[35]  The new statute permitted defense counsel to bypass the district attorney altogether and obtain the criminal history information directly from the Attorney General.

Still, under the statute, defense counsel was required to justify application to the Attorney General by reference to some other statutory or decisional law entitlement.[36]  At the urging of the defense bar, this limitation was removed in 2018, leaving subdivision (b)(9) as it presently reads.[37]  The effect was to guarantee defense attorneys access to

---

[32] *Hill v. Superior Court* (1974) 10 Cal.3d 812, 818, 820.  These rulings, of course, antedated the 1990 adoption of the Crime Victims Justice Reform Act and its incorporated discovery statutes—including section 1054.1(d) and (e), briefly discussed above.  (Prop. 115, approved by the voters June 5, 1990, § 23, Pen. Code, §§ 1054-1054.7.)

[33] Stats. 1975, ch. 1222.  The measure also enacted a parallel comprehensive statutory scheme relative to "local summary criminal history information."  (*Id.,* § 6; Pen. Code, § 13300 et seq.)

[34] Stats. 1975, ch. 1222, § 2, former Pen. Code, § 11105, subd. (b)(8).

[35] See Assem. Com. on Crim. Justice, Analysis of Assem. Bill No. 1674 (1975-1976 Reg. Sess.) as introduced Apr. 14, 1975, p. 2, citing *Engstrom*, *supra*, 20 Cal.App.3d 240.  The context of this legislative history is defense counsel's legitimate interest in witness or victim RAP sheets, rather than defendant's own RAP sheet, which is the issue here.  Nevertheless, the legislative history is instructive, as it illustrates the Legislature's motivation to facilitate defense counsel access to RAP sheet information.  In a companion opinion, we apply this legislative history to the question whether section 11105(b)(9) limits a district attorney's power voluntarily to furnish a witness or victim RAP sheet to defense counsel.  (See 105 Ops.Cal.Atty.Gen. 157, 160 (2022).)

[36] Cf., e.g., *Craig v. Municipal Court* (1979) 100 Cal.App.3d 69, 78.

[37] Stats. 2018, ch. 965, § 1; see now, Pen. Code, § 11105, subd.(b)(9).

20-1001

RAP sheet information from the Attorney General, "if needed in the course of their duties."[38]

If anything, then, the history of section 11105(b)(9) is one of facilitating defense counsel access to RAP sheet information. We can find no basis in either the statutory language itself or in the pertinent legislative history to construe section 11105(b)(9) as an implied prohibition against a prosecuting attorney voluntarily providing a defendant's RAP sheet to defense counsel. Since the Legislature has demonstrated that it will restrict secondary dissemination of RAP sheet information when it wants to, we are disinclined to read into section 11105(b)(9) an implied prohibition against subsequent dissemination to defense counsel in the course of discovery.[39]

### Section 11125

Some district attorneys argue that section 11125 makes it unlawful for defense counsel to request a RAP sheet from the district attorney. That statute reads: "No person or agency shall require or request another person to furnish a copy of a record or notification that a record exists or does not exist, as provided in Section 11124. A violation of this section is a misdemeanor."[40]

As we noted earlier, the general rule is that statutory construction begins with the plain language of the statute.[41] However, it is also settled that "[t]he intent of the law prevails over the letter of the law, and the letter will, if possible, be so read as to conform

---

[38] Pen. Code, § 11105, subd. (b).

[39] See, e.g., *San Diego County Employees Ret. Assn. v. County of San Diego* (2007) 151 Cal.App.4th 1163, 1176 ("Legislature knew how to impose restrictions on a county's use of the retroactive benefit, and by not including [such] a rule . . . , we infer this requirement was not intended").

[40] Pen. Code, § 11125. The term "record" means a person's state summary criminal history information. (Pen. Code, § 11120.) As a threshold matter, the literal reading being suggested would obviously be inconsistent with the statute's companion section 11124, which authorizes a person to request a copy of his or her own RAP sheet from the Attorney General. Moreover, section 11105(b)(9), clearly authorizes a defendant, through counsel, to request his or her own RAP sheet from the Attorney General.

[41] *Dyna-Med, Inc. v. Fair Employment & Housing Com*, *supra*, 43 Cal.3d at pp. 1386-1387.

to the spirit of the act."[42]  In this case, when it enacted section 11125, the Legislature was very clearly addressing a specific concern that had nothing to do with the context at issue here.  That purpose was to prevent an unlawful invasion of privacy.

Before 1980, a person desiring to see his or her own state summary criminal history information was limited to viewing the information in the Sacramento or Los Angeles offices of the Department of Justice; the person was not permitted to retain a copy.[43]  In 1980, the Legislature amended section 11124 to authorize a person who is the subject of state summary criminal history information to obtain a physical copy of the RAP sheet; if the Attorney General did not have a RAP sheet on the person, the person was so notified.[44]  As explained below, section 11125 was enacted in conjunction with this amendment to section 11124, out of a concern that the opportunity to obtain a copy of one's own RAP sheet could invite unintended coercion of the applicant by others, in violation of statutory privacy rights.

State law generally protects an individual from having to disclose to potential employers and others the existence of arrests that did not result in a conviction or other adverse conclusion.  For example, in 1980 (when section 11125 was added) Labor Code section 432.7 provided in relevant part:  "No employer whether a public agency or private individual or corporation shall ask an applicant for employment to disclose, through any written form or verbally, information concerning an arrest or detention which did not result in conviction . . . ."[45]  A similar policy has long been included in California's licensing statutes.[46]  Section 11125 was enacted to prevent an employer from circumventing these policies by requiring a job applicant to procure a copy of his or her

---

[42] *People v. Elmore* (2014) 59 Cal.4th 121, 139-140; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735; see also *People v. Henderson* (2020) 46 Cal.App.5th 533, 545; 88 Ops.Cal.Atty.Gen. 77, 79 (2005).

[43] See Stats. 1972, ch. 1377, § 86.4 (former Pen. Code, § 11124).

[44] Stats. 1980, ch. 939, § 4; see Assem. Bill No. 2371 (1979-1980 Reg. Sess.); Pen. Code, § 11124 ("When an application is received by the department, the department shall determine whether a record pertaining to the applicant is maintained.  If such record is maintained, the department shall furnish a copy of the record to the applicant or to an individual designated by the applicant.  If no such record is maintained, the department shall so notify the applicant or an individual designated by the applicant").

[45] Stats. 1977, ch. 574, § 1 (former Lab. Code, § 432.7, subd. (a)).

[46] See Stats. 1974, ch. 1321; see also Bus. & Prof. Code, §§ 461, 480, subd. (d); Ins. Code, §§ 11580.08.

RAP sheet, or to provide evidence that one does not exist. As stated in a legislative committee analysis for the bill that enacted section 11125:

> Under existing law (Labor Code § 432.7), no employer, with certain exceptions, shall ask an applicant for employment to disclose information: concerning an arrest or detention which did not result in conviction, or information concerning participation in any pretrial or post-trial diversion program, nor shall any employer seek or utilize such information from any source as a factor in determining any condition of employment, including hiring, promotion, or termination; under [this bill], it would be a misdemeanor *for any person to require an employee or prospective employee to obtain a copy of a state summary criminal record or a notification that such a record does or does not exist*.[47]

Contrary to the argument advanced by some district attorneys, then, the "person" being referenced in the statute's opening phrase—"No person or agency shall"—is not the person who is the subject of the record being sought, but rather a prospective employer or licensing agency. In other words, section 11125 makes it unlawful for any person to coerce another person to procure a copy of his or her own RAP sheet or evidence of its non-existence. To construe the statute in the manner urged by the district attorneys would not only conflict with other related statutes, as we have noted above, but would find no support in the statute's legislative history. We decline to give section 11125 such a reading.[48]

---

[47] Assem. Com. on Crim. Justice, analysis of Assem. Bill No. 2371 (1979-1980 Reg. Sess.) as introduced, pp. 1-2, hearing date Mar. 24, 1980, italics added. Indeed, legislators were urged to consider whether even the proposed misdemeanor penalty would provide a sufficient deterrent. (*Ibid.*)

[48] See *People v. Warren* (2018) 24 Cal.App.5th 899, 915 (rejecting literal construction as inconsistent with legislative intent); *In re J.F.* (2014) 228 Cal.App.4th 202, 211 ("Although the meaning of a statutory phrase may be plain and certain if the phrase is considered in isolation, blind adherence to the text of a statutory phrase is improper if its literal interpretation is inconsistent with other provisions of the same statute, defeats the apparent legislative intent and is otherwise in conflict with accepted interpretive canons"); see also 101 Ops.Cal.Atty.Gen. 92, 104, fn. 76 (2018) (rejecting anomalous construction); 62 Ops.Cal.Atty.Gen. 150, 153 (1979) (same).

We conclude that a district attorney may, during the discovery phase of a criminal or juvenile delinquency proceeding, voluntarily provide a public defender or other defense counsel of record with a copy of the defendant's own RAP sheet. [49]

## 2. Redaction

Our requestor has also asked, in the event we conclude that a district attorney may voluntarily comply with defense counsel's request for the defendant's RAP sheet, whether any information must be redacted from the RAP sheet before furnishing it to defense counsel. The answer depends on whether defense counsel represents an adult or a minor.

California has a strong policy favoring confidentiality of juvenile records. That policy helps to protect the interests of the child by assuring fairness, avoiding the stigma of criminality, and assisting in rehabilitation.[50] Welfare and Institutions Code section 827 "sets the current parameters of this state's policy with respect to the confidentiality of juvenile records and governs release of such records."[51] Generally, matters in a juvenile court file are confidential and may be inspected only by statutorily identified persons or by other persons having the court's permission.[52]

---

[49] Our opinion concerns only the context wherein there is a discovery relationship between the district attorney and defense counsel in a criminal or juvenile delinquency proceeding. In that context, the district attorney is authorized to share RAP sheet information with defense counsel, and defense counsel is authorized to receive that information. The question presented to us is only whether the district attorney may share the information voluntarily, i.e., in the absence of a statutory mandate or discovery order. We have not been asked, nor have we considered, whether a district attorney may disseminate state summary criminal history information to a criminal defense attorney in any other context.

[50] *T.N.G. v. Superior Court* (1971) 4 Cal.3d 767, 776-777; *In re R.G.* (2000) 79 Cal.App.4th 1408, 1410-1411.

[51] *Pack v. Kings County Human Services Agency* (2001) 89 Cal.App.4th 821, 827.

[52] 65 Ops.Cal.Atty.Gen. 503, 503 (1982); see Welf. & Inst. Code, § 827, subd. (a)(4) ("A juvenile case file, any portion thereof, and information relating to the content of the juvenile case file, may not be disseminated by the receiving agencies to a person or agency, other than a person or agency authorized to receive documents pursuant to this section"); *T.N.G. v. Superior Court*, *supra*, 4 Cal.3d at p. 778 (juvenile court with exclusive authority to determine the extent to which juvenile records may be released to third parties).

Insofar as is relevant here, section 827 authorizes counsel for a minor defendant in an active criminal or juvenile delinquency proceeding to access the minor's records.[53] Accordingly, if a juvenile defendant's RAP sheet is requested under section 11105(b)(9), the Department of Justice will provide a complete and unredacted copy to defense counsel.  A district attorney may, therefore, do the same.

However, section 827 does not authorize counsel for an adult defendant to have access to that defendant's *juvenile court* information.  Section 827(a)(1) specifies that, except in circumstances not relevant here, "a case file may be inspected *only* by" the specifically identified persons, and counsel for a defendant in an adult criminal proceeding is not among those listed.[54]  In such a case, the juvenile court has "exclusive authority" to determine whether and to what extent to grant access to confidential juvenile records.[55]  It is the Department of Justice's practice to adhere to the plain language of section 827 and, therefore, to redact from an adult defendant's RAP sheet any juvenile court information before furnishing the RAP sheet to defense counsel under section 11105(b)(9).[56]  A district attorney should likewise ensure that such information is redacted from an adult defendant's RAP sheet before voluntarily providing the RAP sheet to defense counsel in a criminal proceeding.

Thus, we conclude that a district attorney must redact juvenile court information from an adult defendant's RAP sheet before voluntarily providing it to counsel for the adult defendant, but may provide an unredacted copy of a juvenile defendant's RAP sheet to counsel for the juvenile defendant.

---

[53] Welf. & Inst. Code, § 827, subd. (a)(1)(E).

[54] Welf. & Inst. Code, § 827, subd. (a)(1), emphasis added.

[55] *J.E. v. Superior Court*, *supra*, 223 Cal.App.4th at p. 1337; *T.N.G. v. Superior Court*, *supra*, 4 Cal.3d at p. 778; see *Hodges v. Hertz Corp.* (N.D. Cal.) 351 F.Supp.3d 1227, 1232-1233 (juvenile court permission required for use of records not specified in protective order); 66 Ops.Cal.Atty.Gen. 106, 110 (1983).

[56] Defense counsel may, however, petition the juvenile court for this access.  (Welf. & Inst. Code, § 827, subd. (a)(1)(Q); see *People v. Stewart* (2000) 55 Cal.App.5th 755, 773 (a person not within categories of people who may inspect juvenile records without a court order must petition the juvenile court to obtain access to them).)